IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

OAKMONT LLC,                                )
an Oregon limited liability company,        )
                                            )
                Plaintiff,                  )       TC-MD 120159D
                                            )
        v.                                  )
                                            )
CLACKAMAS COUNTY ASSESSOR,                  )
and DEPARTMENT OF REVENUE,                  )
State of Oregon,                            )
                                            )
                Defendants.                 )       **DECISION**

        Plaintiff filed its Complaint on March 28, 2012, appealing conference decision No. 11-

0049 of Defendant Department of Revenue (department) finding that the department did not

have jurisdiction to consider Plaintiff's petition for review under ORS 306.115 for property

identified as Account 01662070 (subject property).   Plaintiff alleges that the department's

dismissal of Plaintiff's petition for lack of supervisory jurisdiction was contrary to its

administrative rules and was an abuse of discretion.

        Plaintiff filed a memorandum (Plaintiff's motion for summary judgment) on November 6,

2012.  Defendant Clackamas County Assessor (county) filed a cross-motion for summary

judgment on December 14, 2012.  The department filed its Cross-Motion for Summary Judgment

on December 14, 2012.  Oral argument was held in the Oregon Tax Court, Salem, Oregon on

February 19, 2013.  Jack L. Orchard Jr., Attorney at Law, appeared on behalf of Plaintiff.

Kathleen J. Rastetter, Senior County Counsel, appeared on behalf of the county and Douglas M.

Adair, Senior Assistant Attorney General, appeared on behalf of the department.

        Department of Revenue Conference Record 11-0049, dated February 8, 2012, was

submitted by the department and relied upon by all parties in support of their motions.

DECISION  TC-MD 120159D                                                                      1

# I. STATEMENT OF FACTS

Plaintiff purchased the subject property in 2003. (Conf Rec at 29.) At some point in 2007 Plaintiff became aware of possible construction defects in the subject property. (*Id*.) After "extensive investigation" Plaintiff filed "civil negligence lawsuits in 2008" resulting in an award of undisclosed damages. (*Id*.)

Plaintiff filed a property tax appeal for the 2009-10 tax year. The Regular Division of the Oregon Tax Court entered a Stipulated Judgment, stating that the agreed real market value of the subject property was $8,500,000 for the 2009-10 tax year. (*Id*. at 28.) In connection with the 2009-10 tax appeal, the county submitted an appraisal report (appraisal) dated February 11, 2011, prepared by Ronald R. Saunders and Cheryl A. Gordon of Clackamas County, and that appraisal report was referenced in the department's conference record. (*Id*. at 67-168.) Plaintiff and the county agreed that the real market value for the 2010-11 tax year was $6,800,000.[1] (*Id*. at 17, 27.)

The subject property's real market value on the tax roll for the 2008-09 tax year was $22,914,810. (*Id*. at 163.) Plaintiff filed a petition with the department on June 9, 2011, requesting the department to exercise its supervisory jurisdiction to reduce the subject property's real market value for the 2008-09 tax year. (*Cf*. Conf Rec at 1.) The department held a supervisory conference on December 15, 2011. (*Id*. at 3.) The record before the department included repair estimates, the board of property tax appeals' documents for the subject property, documents submitted in conjunction with an Oregon Tax Court appeal, a Stipulated Judgment from the Oregon Tax Court Regular Division for the 2009-10 tax year, and letters written by

---

[1] For the 2010-11 tax year, Plaintiff stated that the real market value was $6,900,000, the Real Property Order from the board of property tax appeals listed the real market value as $6,800,000. No explanation was given for the discrepancy.

Plaintiff and the county in preparation for the department's conference hearing. (*See generally* Conf Rec.)

The department's decision, dated February 8, 2012, stated that "[Plaintiff] presented * * * documentation * * * asserting three agreements to facts that would pre date the date of value January 1, 2008 for the tax year 2008-09 that could likely indicate a valuation error." (*Id.* at 4-5.) The facts as stated by Plaintiff are: (1) "[t]he Assessor has agreed that [the subject property] was substantially and materially impacted by construction defects which pre-dated January 1, 2008"; (2) "[t]he construction defects substantially devalued the property"; and (3) "[t]he full extent of the construction defects, the resulting damage and costs to cure and the effect on the property's value was not known until 2010-'11." (*Id.* at 16-17.)

The department reviewed the first potential agreement to facts by analyzing several written statements contained in the appraisal. (*Id.* at 4.) The statements all referred to the fact that possible construction defects were discovered in 2007 which " 'resulted in extensive investigation regarding the condition of the subject property.' " (*Id.*) (Quoting the appraisal.) The department concluded that

> "[t]hese statements do not specify the nature or extent of the construction defects, only that some were noted and investigated. Since there is no agreement as to the condition of the property as of January 1, 2008 the agreed fact that * * * an investigation was conducted is not an indication of a likely error on the roll."

(*Id.*) The department also concluded that Plaintiff's other two alleged facts "did not predate the date of value or indicate the condition of the property as of the valuation date." (*Id.*) The department did not recite the alleged facts or give any reasoning as to why those alleged facts did not predate the date of valuation. The ultimate conclusion reached by the department was that "[t]he record indicates knowledge and the extent of the condition of the property was not known

/ / /

for the tax year in question as of the January 1, 2008 valuation date" and that the department "does not have jurisdiction to review the substantive issues of [Plaintiff's] appeal." (*Id.* at 4.)

## II. ANALYSIS

The issue in this case is whether the department abused its discretion by determining it did not have jurisdiction to exercise its supervisory authority to hear Plaintiff's petition pursuant to ORS 306.115.[2]

The parties submitted cross motions for summary judgment. The standard for summary judgment is provided by Tax Court Rule (TCR) 47 C,[3] which states in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

"The court must review decisions of the department under ORS 306.115 for abuse of discretion." *ADC Kentrox v. Dept. of Rev.* (*ADC Kentrox*), 19 OTR 91, 98 (2006). "[T]he court's review is limited to determining, based solely on the evidence presented to the department at the supervisory conference, whether the department abused its discretion in finding that the parties did not agree to facts indicating a likely error on the roll." *Thomas Creek Lumber & Log Co. v. Dept. of Rev.* (*Thomas Creek*), 19 OTR 103, 106 (2006) (citing *ADC Kentrox*, 19 OTR at 99-100). The court will only overturn the department's decision if the department "acted 'capriciously or arrived at a conclusion which was clearly wrong' " based on

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2009. The court's references to the Oregon Administrative Rules (OAR) are to the current version.

[3] TCR 47 is made applicable through the Preface to the Magistrate Division Rules, which states in pertinent part, that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

the evidence before the department at the time of its decision. *Resolution Trust Corp. v. Dept. of Rev.* (*Resolution Trust*), 13 OTR 276, 279 (1995) (quoting *Martin Bros. v. Tax Commission*, 252 Or 331, 338 (1969) (citations omitted).[4] Additionally, the court cannot "substitute its own view for the administrator's judgment upon matters committed to his determination, if the record in the case supports the finding under applicable law." *Rogue River Pack. v. Dept. of Rev.*, 6 OTR 293, 301 (1976).

A petition under ORS 306.115 is not an ordinary appeal. "When a taxpayer petitions the department under ORS 306.115, it is not 'appealing' in the usual sense. It is helping the department to 'discover' a reason to correct the tax roll." *ADC Kentrox*, 19 OTR at 100 (internal quotation marks omitted). "When considering petitions filed under ORS 306.115, the department is not concerned with adjudicating property values as if on appeal so much as it is with overseeing the entire property tax system in this state." *Id.* at 101 (citing *FSLIC v. Dept. of Rev.,* 11 OTR 389 (1990)).

Plaintiff's petition for review with the department was filed under ORS 306.115 and its related administrative rules. ORS 306.115 grants the department general supervisory powers to make changes to the tax rolls, stating in relevant part that:

> "(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. * * *.

> \* \* \* \* \*

> "(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll * * * if * * * the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law. * * *.

---

[4] The real market value of the subject property is not an issue before this court. The definition of real market value is relevant to determining whether the department abused its discretion because Plaintiff alleges an error in the real market value on the roll for the subject property. Real market value is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205.

"(4) Before ordering a change or correction to the assessment or tax roll under subsection (3) of this section, the department may determine whether any of the conditions specified in subsection (3) of this section exist in a particular case. * * *."

ORS 306.115. The department has promulgated rules to determine when such conditions exist:

"(3) Before the department will consider the substantive issue in a petition * * * the petitioner has the burden of showing that the requirements for supervisory jurisdiction, as stated in ORS 306.115 and section (4) of this rule, have been met. The department will base its determination on the record before it.

* * * * *

"(4) The department will consider the substantive issue in the petition only when:

* * * * *

"(b) The department determines that an error on the roll is likely as indicated by at least one of the following standards:

"(A) The parties to the petition agree to facts indicating likely error; or

"(B) There is an extraordinary circumstance indicating a likely error."

OAR 150-306.115. To determine that the parties have agreed to facts "it is not required that the parties agree there is an error on the roll. [The rule] merely requires the parties to agree on facts. It is left to [the department] to determine whether those facts indicate that it is likely an error exists on the roll." *Ohio State Life Ins. Co. v. Dept. of Rev.*, 12 OTR 423, 426 (1993). "[T]he ultimate question is whether or not the parties *unequivocally* agreed to facts that indicate it is likely that an error exists on the roll." *Direct Imports v. Multnomah County Assessor,* 16 OTR-MD 242, 249 (2000) (citing *Eyler v. Dept. of Rev.* (*Eyler*), 14 OTR 160, 162 (1997)) (original emphasis altered).

To determine whether department abused its discretion, the department's findings are reviewed.

A.    *The construction defects predated the January 1, 2008, valuation date*

Plaintiff's first alleged agreement of fact was "[t]he Assessor has agreed that [the subject property] was substantially and materially impacted by construction defects which pre-dated January 1, 2008." (Conf Rec at 16.)  Plaintiff relied on the county's appraisal and statements made by Ron Saunders to show that there was an agreement to the first alleged fact.  (*See* Conf Rec at 16.)  The conference officer reviewed the appraisal and statements, concluding that the "statements [did] not specify the nature or extent of the construction defects, only that some were noted and investigated" and that the only agreed fact was that "an investigation was conducted." (*Id.* at 4.)

The presence of an investigation and subsequent repair estimates are not explicit, unequivocal agreements as to the subject property's condition as of the assessment date, January 1, 2008.  In *Eyler* the court determined that even though the record included "suggestions and inferences" the court was unable to conclude "that the parties actually agreed to facts."  *Eyler* 14 OTR at 162.  The court requires explicit facts, "inferences and innuendos [do] not constitute agreement as to the critical facts."  *Id.* at 162-163.

In the case before the court, there is no unequivocal evidence that the assessor agreed the subject property's real market value was negatively impacted by construction defects as of January 1, 2008.  In support of its first alleged fact, Plaintiff relies on the county's appraisal that was prepared to determine an opinion of real market value for the subject property as of January 1, 2009, for the 2009-10 tax year.  Plaintiff's first alleged fact is evidence that as of January 1, 2009, the assessor agreed that the subject property's real market value was reduced by identified construction defects, but that appraisal is not an explicit agreement that as of January 1, 2008, the assessor agreed the property was "impacted by construction defects which pre-dated January 1,

2008." (Conf Rec at 16.) The department did not abuse its discretion in finding no agreement to facts indicating an error on the tax roll for the 2008-09 tax year based on Plaintiff's first alleged fact.

B.    *Construction defects devalued the subject property*

Plaintiff's second and third alleged agreed facts pertain to the impact construction defects had on the real market value of the subject property and the real market value agreed to by Plaintiff and Defendant county in the tax years following the 2008-09 tax year at issue. (Conf Rec at 16-17.) Plaintiff relies on the county's appraisal, the stipulated agreement for the 2009-10 tax year, and the agreement between Plaintiff and the county for the 2010-11 tax year. The department concluded that the second and third alleged facts "did not predate the date of value or indicate the condition of the property as of the valuation date. Consequently they cannot indicate a likely error on the roll as of January 1, 2008." (*Id.* at 4.)

A stipulated agreement for a "[subsequent year's] roll value is not conclusive on the question of whether an error existed on the roll for [a previous year]." *ADC Kentrox II v. Dept. of Rev.*, 19 OTR 340, 348 (2007) (*ADC Kentrox II*). The stipulation for the 2009-10 tax year and the agreement for the 2010-11 tax year between Plaintiff and Defendant county do not state the factors considered by the parties in arriving at stipulated real market values. (Conf Rec at 27-28.) The stipulated real market values are not a basis of an agreed fact for the 2008-09 tax year; the reductions are not indicative of the real market value as of January 1, 2008, or explicit agreement by the county as to the condition of the subject property as of the January 1, 2008, assessment date. The second and third alleged facts relate to what facts the county agreed to as of January 1, 2009, and January 1, 2010, the relevant assessment dates for the 2009-10 and

/ / /

2010-11 tax years. While it is possible to infer other facts from the assessor's statements, there are no explicit agreements to facts and none that are relevant to the 2008-09 tax year.

Plaintiff alleges that "the full extent of the construction defects, the resulting damage and costs to cure and the effect on the property's value was not known until 2010-'11." (*Id.* at 17.) In support of this allegation Plaintiff relied on the agreements by the county to reduce the real market value of the subject property for the 2009-10 and 2010-11 tax years. (*Id.* at 17-18.) Plaintiff's third alleged fact is not evidence that there was an agreed fact indicating an error on the roll as of the January 1, 2008. All of Plaintiff's cited support relates to what was agreed upon by the county and Plaintiff for the 2009-10 and 2010-11 tax years. While it is agreed that the subject property's real market value for those years reflect a recognition that that there were construction defects and those defects negatively impacted the subject property's real market value, Plaintiff did not provide any evidence that the county and Plaintiff agreed that the subject property's real market value was negatively impacted by construction defects as of January 1, 2008, or that the market knew of those construction defects as of January 1, 2008, and that such knowledge would result in a willing buyer negotiating a lower purchase price in an arm's length transaction.

The department did not abuse its discretion when it concluded that construction defects known after the January 1, 2008, assessment date could not have been taken into account in determining the subject property's real market value for the 2008-09 tax year.

### III. CONCLUSION

After a careful review of the record, statutes and administrative rules, the court concludes that the department did not act in a capricious manner or arrive at a decision which was clearly wrong in finding that there were not any agreed facts that indicated a likely error on the roll for

the 2008-09 tax year. The department did not "act[] capriciously or arrive[] at a conclusion which was clearly wrong" based on the statements contained in the record before the department. *Resolution Trust,* 13 OTR at 279 (internal quotation marks omitted). There was no abuse of discretion by the department. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's motion is denied.

IT IS FURTHER DECIDED that Defendants' motions are granted. The appeal is denied.

Dated this ⎯⎯ day of April 2013.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on April 16, 2013. The Court filed and entered this Decision on April 16, 2013.*