IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RAINSWEET INC.                           )
and RS GROWERS INC.,                     )
                                         )
          Plaintiffs,                    )   TC-MD 130049N
                                         )
     v.                                  )
                                         )
POLK COUNTY ASSESSOR                     )
and DEPARTMENT OF REVENUE,               )
State of Oregon,                         )
                                         )
          Defendants.                    )   **FINAL DECISION**

The court entered its Decision in the above-entitled matter on November 14, 2013. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

This matter is before the court on cross-motions for summary judgment from Plaintiffs and Defendant Department of Revenue (department). Plaintiffs appeal the department's Conference Decision No. 11-0088, which dismissed Plaintiffs' petition for review of three tax years' roll values of 11 industrial and personal property accounts because Defendant Polk County Assessor (assessor) did not agree to facts indicating a likely error on the roll. Oral argument on the motions was held via telephone on August 7, 2013. W. Scott Phinney, Attorney, represented Plaintiffs. Douglas Adair, Assistant Attorney General, represented the department.

## I. STATEMENT OF FACTS

Plaintiffs submitted a "Property Appeal Petition" (petition) to the department, asking it to exercise its supervisory power to reduce the 2008-09, 2009-10, and 2010-11 tax roll values of

Polk County Accounts 259413, 259468, 259426, 572226, 701077, 259471, 701066, 701061, 530675, 561130, and 120553. (Conf Rec at 5-23.)[1] Plaintiffs' petition summarily alleged various legal justifications for the department to assume jurisdiction, including the taxation of nonexistent items, errors in personal property reporting, reliance on misinformation from the department, and "[a]greement on facts that indicate an error." (*Id*. at 6.) The petition did not state facts supporting those legal justifications.

The conference record contained responses to Plaintiffs' petition from both the assessor and the department's valuation section. The assessor checked the "No" box indicating that it did not "agree to the facts as represented by the taxpayer on their petition"; the department declined to check either the "Yes" or the "No" box in its responses. (Conf Rec at 49-55, 58-66.) The assessor stated that "[t]his is a DOR [Department of Revenue] responsibi[li]ty account(s)." (*Id*. at 49.) The department's valuation section submitted nine similar responses, each stating that it was unable to agree or disagree to any facts because "[t]he filed complaint presents no detail regarding or supporting the allegation." (*Id*. at 58-66.)

The department's supervisory conference was held July 17, 2012, with representatives from the department and the assessor present. (Conf Rec at 77.) No testimony was received into the record at the hearing. (Conf Recording.)

The only evidence offered by Plaintiffs to the department in support of their claim of an agreement to facts indicating likely error was a department appraisal report for real property in Accounts 259413, 259426, and 259468 (the appraisal properties), as well as personal property in an additional account that was not at issue in the petition. (Conf Rec at 163-75.) The appraisal properties included "[r]eal property improvements including buildings, structures, yard

---

[1] The court's citations to the conference record are to department's Exhibit A.

improvements, and machinery and equipment," and excluded "[l]and, inventory, and licensed vehicles." (*Id*. at 166.)

The appraisal report determined a January 1, 2010, real market value for the appraisal properties of $1,713,596 for buildings, structures, and machinery and equipment, and $42,891 for personal property. (Conf Rec at 166.) The combined 2010-11 tax roll improvement value of the appraisal properties was $2,135,450. (*See id*. at 53-54.)

The conference decision dismissed Plaintiffs' petition for lack of jurisdiction, concluding that

> "the department does not find any agreement by all the parties to the petition to any facts that indicate an assessment error is likely. Further, there is no substantiated evidence that any of the other supervisory standards identified in OAR 150-306.115 have been satisfied."

(*Id*. at 78-79.) After noting that the department stated it did not agree to any facts, the conference decision discussed the possibility that the department has actually agreed to the existence of the appraisal: "at most, [Plaintiffs and the department] agree that an opinion of value exists[.]" (*Id*. at 78.) However, the conference officer did not resolve the question of what the department had agreed because it proceeded to reason as follows:

> "Regardless of whether or not the department considers the appraisal of the subject property by the valuation section as a fact, to which [Plaintiffs] and valuation section agree, indicating a likely error on the roll, the county assessor is also a party to the petition. * * * In this case there is no evidence that the county assessor has agreed to any facts."

(*Id*.)

Plaintiffs appeal the conference decision, requesting the court to direct the department to hold a merits conference.

/ / /

/ / /

## II. ANALYSIS

The primary issue in this case is whether the department abused its discretion by dismissing Plaintiffs' supervisory petition. A subsidiary issue is whether the department permissibly denied review of the 2010-11 roll value of the appraisal properties for the reason that the assessor did not agree to the existence of the department's appraisal report of those properties.

A.      *The department's supervisory power*

The department has statutory authority to "exercise general supervision and control over the system of property taxation throughout the state." ORS 306.115(1).[2] In exercise of that authority, the department

> "may order a change or correction applicable to a separate assessment of property to the assessment or tax roll * * * if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law * * *."

ORS 306.115(3).

Pursuant to the rulemaking authority granted to it by ORS 305.100, the department promulgated Oregon Administrative Rule (OAR) 150-306.115, which allows for taxpayer petitions and regulates its consideration of them. The relevant portion of that rule is as follows:

> "(4) The department will consider the substantive issue in the petition only when:
>
> "(a) The assessor or taxpayer has no remaining statutory right of appeal; and
>
> "(b) The department determines that an error on the roll is likely as indicated by at least one of the following standards:
>
> "(A) The parties to the petition agree to facts indicating likely error; or
>
> "(B) There is an extraordinary circumstance indicating a likely error. Extraordinary circumstances under this provision are:

---

[2] The court's citations to the Oregon Revised Statutes (ORS) are to 2011.

"(i) The taxation of nonexistent property * * *

"(ii) Taxpayers' computational or clerical errors in reporting the value of personal property pursuant to ORS 308.290;

"* * * * *."

OAR 150-306.115(4).

B.    *Standard of review*

The court reviews the department's use of its supervisory power under ORS 306.115 for abuse of discretion. *ADC Kentrox v. Dept. of Rev.* (*ADC Kentrox*), 19 OTR 91, 98 (2006). Abuse of discretion occurs when an agency "act[s] capriciously or arrive[s] at a conclusion which was clearly wrong[,]" or when it "does not act upon the facts presented to it or fails to obtain the factual data necessary for a proper result." *Martin Bros. v. Tax Commission*, 252 Or 331, 338, 449 P2d 430 (1969); *Rogue River Pack. v. Dept. of Rev.* (*Rogue River Pack*), 6 OTR 293, 301 (1976). So long as the agency's findings are supported by the record before it, the court will not substitute its judgment for that of the agency. *Rogue River Pack*, 6 OTR at 298.

The court's standard for reviewing motions for summary judgment is provided in Tax Court Rule (TCR) 47.[3] The court grants motions for summary judgment where the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." TCR 47 C.

Plaintiffs' Motion for Summary Judgment (Motion) alleges three reasons this court should find that the department abused its discretion: agreement to facts indicating likely error, good and sufficient cause, and extraordinary circumstances.

/ / /

---

[3] TCR 47 is made applicable through the preface to the rules of the Magistrate Division, which states that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

C.      *Agreement of the parties to facts indicating likely error*

The department must hold a merits conference if (1) the parties to the petition agree to certain facts; and (2) those facts indicate a likely error on the tax roll. *See Thomas Creek Lumber & Log Co. v. Dept. of Rev.* (*Thomas Creek*), 19 OTR 103, 106 (2006) (department "must" hold a merits conference "[w]here the parties agree on facts indicating a likely error on the roll"); OAR 150-306.115(4)(b)(A). The agreement of the parties is to facts, not to an error. *Ohio State Life Ins. Co. v. Dept. of Rev.* (*Ohio State Life*), 12 OTR 423, 426 (1993). The department determines whether the agreed facts indicate a likely error. *Id.*

In the present case, Plaintiffs' sole alleged agreed fact supported by evidence in the conference record is the existence of the department's appraisal report. Although Plaintiffs' brief also alleges in passing that the parties have agreed that "the values at issue had been established by trending" and that "a new appraisal was needed because of errors in the asset listing and obsolescence[,]" there is no evidence in the conference record to support those allegations. (Ptfs' Mot Summ J at 10.)

Although the conference decision's conclusion is ambiguous, the discussion preceding that conclusion indicates that Plaintiffs' petition was dismissed because the conference officer found that the parties to the petition did not agree to the existence of the appraisal report. (*See* Conf Rec at 78.) The conference decision reached that conclusion from its premise that the assessor, which did not agree to any facts, is a party to the petition:

> "Regardless of whether or not the department considers the appraisal of the subject property by the valuation section as a fact, to which the petitioner and valuation section agree, indicating a likely error on the roll, the county assessor is also a party to the petition. * * * In this case there is no evidence that the county assessor has agreed to any facts."

(*Id.*)

/ / /

1.      *Is it abuse of discretion to find that the parties to the petition did not agree to facts indicating likely error?*

a.      Is the assessor a party to the petition?

Plaintiffs argue that the agreement or disagreement of the assessor to the appraisal report's existence is irrelevant because the appraisal properties are industrial property the valuation of which is the department's responsibility. (Ptfs' Mot Summ J at 10-11.) The department, in response, asserts that this court, in *ADC Kentrox*, 19 OTR at 100, determined that the county assessor is a necessary party to a property value petition. (*See* Def Depts' Cross-Mot Summ J at 5.) At oral argument, the department argued that because the assessor - which did not agree to any facts - is a party, the conference decision's denial of Plaintiffs' request for a merits hearing was within its discretion.

The question presented in this case differs from that presented in *ADC Kentrox*. In the latter, the court was asked to consider whether the predecessor to the current OAR 150-306.115(4)(b)(A) was invalid as a *de facto* improper delegation of the department's supervisory authority to the counties. *ADC Kentrox*, 19 OTR at 99-100. The theory put forward by the plaintiff in *ADC Kentrox* was that a county could unilaterally prevent the department from taking jurisdiction by refusing to agree to facts. *Id.* The court rejected that argument, citing the department's wide discretion to determine its own procedure and also noting that the department had provided "other avenues" for taxpayers to show error if the county refused to agree to facts. *Id*. at 100. The court upheld the validity of the department's regulation. In the present case, the validity of OAR 150-306.115(4)(b)(A) has not been challenged; rather, the question is whether the assessor is one of the "parties to the petition" of industrial property valued by the department. That question has not previously been decided by this court.

In construing administrative rules, the court relies on the same methods it uses in statutory construction. *See Boardman Tree Farm v. Morrow County Assessor*, TC 4990 (2011). The court therefore examines the text and context of the rule to discern the intent of the rulemaking agency. *Cf. PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). In so doing, the court applies rules of construction, such as to not "insert what has been omitted, or * * * omit what has been inserted[,]" and to give words of common usage "their plain, natural, and ordinary meaning." (*Id.*)

Under OAR 150-306.126(1)(6), to the extent the department values industrial property pursuant to ORS 306.126, it assumes sole responsibility to defend its valuation against appeals. OAR 150-306.126(1)(6) states:

> "The party that valued the property will be responsible for defending any appeals. In all cases, the county is responsible for the defense of the land valuation."

That regulation's second sentence shows that the department's responsibility for defending appeals of property it has valued is exclusive. Taken alone, the first sentence might have been construed to grant the department concurrent responsibility for defending appeals without taking away the county's responsibility. However, that construction is not preferred because it would render the second sentence superfluous. The alternate construction, which gives effect to all provisions, is that the regulation simultaneously grants responsibility to the department and takes away responsibility from the county for those appeals defended by the department. The court therefore concludes that OAR 150-306.126(1)(6) grants the department sole responsibility for defending appeals of industrial property it values, to the exclusion of the county.

In the case before the court, the petition is an appeal for the purpose of applying the rule determining what entity will defend the roll value. Where the question is not whether to allow a petition but, rather, who will defend the roll value, the distinction between petitions and other

appeals is not pertinent. This court's previous statement that a petitioner is not " 'appealing' in the usual sense from an action of an assessor or board" should not be understood to the contrary. *FSLIC v. Dept of Rev.* (*FSLIC*), 11 OTR 389, 391 (1990). In *FSLIC*, the court found that taxpayers are not precluded from petitioning the department despite having received a favorable result from the board of equalization. *Id*. The way in which a petition is not "usual" is that it is an appeal of the tax roll value itself rather than an appeal of the taxing authority's adverse act. The department, unlike a court, is "charged by law with the duty to correct errors regardless of how it may discover them." *Id*. A petition serves the department's interest in discovering errors no matter what prior determinations have been made by the taxing authority.

With respect to the 2010-11 tax roll value of the appraisal properties, the conference decision misapplied its own rule by asserting the assessor was a party to the petition. *See* OAR 150-306.126(1)(6). In such a case, "[t]he court is unable to measure the department's discretionary decision against the facts" because the department "may have ignored important facts which, if the department had applied the rule correctly, may have resulted in a different decision by the department." *McGill v. Dept. of Rev.*, 14 OTR 40, 43 (1996).

b. Did the department agree to any facts?

At the conference, the department's representative "stated that he did not agree to any facts presented by [Plaintiffs]." (Conf Rec at 78.) The record contains no evidence supporting a change of the 2008-09 and 2009-10 tax roll values of the appraisal properties, or for the other properties for any of the tax years at issue. Therefore, the conference officer was within his discretion to find that the parties did not agree to facts regarding those years and properties.

With respect to the 2010-11 roll value of the appraisal properties, the conference decision's conclusion about the parties' agreement to facts is less clear. The conference decision

discusses whether the department agreed to the existence of its appraisal report, but stops short of concluding that it does. It states that "at most, [Plaintiffs and the department] agree that an opinion of value exists, but the appraisal was not relied on by the valuation section to determine the 2010-11 real market value." (Conf Rec at 78.) Although the department's agreement to the existence of the appraisal it created would appear to be the only possible finding supported by the conference record, the conference decision's use of the qualification "at most" means that the department has not yet made that finding.

Depending on its answer to the question discussed immediately below, the department might decide that finding agreement to the existence of the appraisal is not "necessary for a proper result" in this case. *See Rogue River Pack*, 6 OTR at 298. Pending the department's determination of whether the appraisal indicates a likely error on the roll, the court need not address the department's agreement to its existence at this time.

2.      *Does the appraisal indicate likely error?*

Aside from noting that "the appraisal was not relied on by the valuation section to determine the 2010-11 real market value[,]" the conference decision does not address whether the appraisal report indicates a likely error on the roll. (Conf Rec at 78.) The conference decision gives no explanation of why the department did not rely on its appraisal report.

This court has addressed the question of whether an agreed fact indicates likely error in *Thomas Creek*, 19 OTR at 108, where the court considered the size of the purported error indicated by the agreed fact to be significant. In that case, the department abused its discretion by not holding a merits conference where an agreed fact was that a department appraiser had previously offered a stipulation reducing the roll value by half. *Id*. at 106-08. The court reasoned:

"The department was 'clearly wrong' in concluding that the agreed upon fact of [the department appraiser's] proposed stipulation did not indicate a likely error on the roll. *Especially considering the size of the proposed reduction, the proposal did, indeed, indicate a likely error*."

*Id*. at 108 (emphasis added).

The court's holding in *Thomas Creek* does not state a bright line test for determining the required "size of the proposed reduction" to create a likely error. The court concludes that reducing the roll value by 50 percent does indicate a likely error. In contrast, an agreed fact indicating a real market value differing by less than 10 percent from the tax roll is unlikely to support a finding of error. *See Price v. Dept. of Rev.* (*Price*), 7 OTR 18, 25-26 (1977). In *Price*, the court noted that the appraisal process is "highly subjective," a consequence of which is that value is a range, not an absolute. *Id.* Thus, it is "almost impossible" to prove a reduction in value of less than 10 percent of the tax roll value, and "[a] person experienced in property valuation, having convinced himself that a 10 percent differential or less was involved, would ordinarily seek to dissuade a client from an appeal." *Id*. at 25.

In the present case, because the conference decision based its conclusion on the assessor's nonagreement to any facts, including the appraisal report's existence, rather than on whether the appraisal report indicated likely error, there is no discretionary act of the department for the court to review.

D.   *Other allegations*

In cursory fashion, Plaintiffs' Motion alleges several additional grounds for finding abuse of discretion. Under the heading "Extraordinary Circumstances," Plaintiffs allege:

"The lower values reflected in the appraisal were due to corrected asset lists and reevaluated depreciation. Since the values for all the years at issue were based on trending the same errors are likely for all the years. The refusal to address the taxation of non-existent or misclassified assets is an abuse of

/ / /

FINAL DECISION  TC-MD 130049N                                                                                              11

discretion.  The failure to address likely understated depreciation is an abuse of discretion."

(Ptfs' Mot Summ J at 11.)  Elsewhere, Plaintiffs allege "good and sufficient cause" for failing to timely file the 2009-10 and 2010-11 appeals in the usual course as follows:

"The taxpayers relied on the Department to do an accurate and timely appraisal of their property.  This is what they were led to believe from their contact with Department staff.  The Department did not correct values based on the new appraisal and did not complete the project in a timely manner."

(Ptfs' Mot Summ J at 11.)  Plaintiffs cite no legal authority for why they should prevail on any of those alleged grounds for relief and the conference record does not support their factual assertions.

## IV.  CONCLUSION

With respect to the appraisal properties for the 2010-11 tax year, the court is unable to determine whether the department abused its discretion because the department applied the wrong standard.  With respect to the 2008-09 and 2009-10 tax roll values for the appraisal properties, the department did not abuse its discretion.  With respect to the 2008-09, 2009-10, and 2010-11 tax roll values of the remaining properties, the department did not abuse its discretion.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' motion for summary judgment is denied.

IT IS FURTHER DECIDED that Defendant Department of Revenue's motion for summary judgment is granted with respect to the petition of the 2010-11 tax roll value of the land, inventory, and licensed vehicles identified as Accounts 259413, 259468, and 259426.

IT IS FURTHER DECIDED that Defendant Department of Revenue's motion for summary judgment is granted with respect to the petition of the 2010-11 tax roll values identified as Accounts 572226, 701077, 259471, 701066, 701061, 530675, 561130, and 120553.

IT IS FURTHER DECIDED that Defendant Department of Revenue's motion for summary judgment is granted with respect to the petition of the 2008-09 and 2009-10 tax roll values identified as Accounts 259413, 259468, 259426, 572226, 701077, 259471, 701066, 701061, 530675, 561130, and 120553.

IT IS FURTHER DECIDED that Defendant Department of Revenue's motion for summary judgment is denied with respect to the petition of the 2010-11 tax roll value of the real property improvements, including buildings, structures, yard improvements, and machinery and equipment identified as Accounts 259413, 259468, and 259426.

IT IS FURTHER DECIDED that the petition of the 2010-11 roll value of the real property improvements, including buildings, structures, yard improvements, machinery and equipment, and personal property identified as Accounts 259413, 259468, and 259426, is remanded to the Department of Revenue for proceedings consistent with this Decision.

Dated this ____ day of December 2013.


_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on December 3, 2013. The court filed and entered this document on December 3, 2013.*