IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SPYGLASS COURT OF OREGON LTD.,      )
                                    )
            Plaintiff,              )    TC-MD 120823N
                                    )
     v.                             )
                                    )
LINCOLN COUNTY ASSESSOR             )
and DEPARTMENT OF REVENUE,          )
State of Oregon,                    )
                                    )
            Defendants.             )    **FINAL DECISION**

     The court entered its Decision in the above-entitled matter on November 14, 2013.  The

court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14

days after its Decision was entered.  The court's Final Decision incorporates its Decision without

change.

     Plaintiff appeals the Department of Revenue's (Department) Conference Decision

No 11-0072, issued August 29, 2012.  Stipulated Facts, signed by the parties, were filed April 22,

2013.[1]  Plaintiff's Motion for Summary Judgment was filed May 3, 2013.  The Department's

Motion for Summary Judgment and Brief in Support was filed May 3, 2013.  The Department's

Reply Brief in Support of Motion for Summary Decision (Reply) was filed May 31, 2013.

Plaintiff's Response to the Department's Motion for Summary Judgment (Response) was filed

June 4, 2013.  An oral argument was held by telephone on August 1, 2013.  Christopher K.

Robinson, Attorney at Law, appeared on behalf of Plaintiff.  James C. Wallace, Senior Assistant

Attorney General, appeared on behalf of the Department.

/ / /

---

[1] Stipulated Facts were initially filed April 10, 2013, but not signed by all parties until April 22, 2013.

## I.  STATEMENT OF FACTS

"Plaintiff filed a Property Appeal Petition with the Department * * * regarding [Account R203208,] the subject property[,] for the 2008 and 2009 tax years[.]"  (Stip Facts at ¶1.)  The Department found the "Supervisory Standard Met" based on a "Fact of Interest to the Department, not involving valuation judgment."  (Ptf's Am Compl at 3.)  The Department held a "merits conference" on Plaintiff's petition on July 11, 2012, and sustained the subject property's real market value for the 2008-09 and 2009-10 tax years because Plaintiff "failed to meet the burden of proof."  (Stip Ex D at 1; Ptf's Am Compl at 3.)

The Department's conference officer found that the subject property "is a low income housing apartment qualifying under the Internal Revenue Code Section 42 rural development 515."  (Ptf's Am Compl at 4.)  The conference officer stated that "[s]uch properties must be valued so as to take into account the government restrictions on use to be consistent with the Oregon Supreme Court ruling in" *Bayridge Assoc. Ltd. Partnership v. Dept. of Rev.*, 321 Or 21, 892 P2d 1002 (1995).  (*Id.*)  The conference officer determined that "[t]he subject property was not specially assessed as provided in [ORS] 308.712, therefore the decision of the Tax Court in *Wilsonville Heights Assoc., LTD v. Department of Revenue*, 17 OTR 139 (2003), as affirmed by the [Oregon] Supreme Court, provides guidance for the determination of real market value."  (*Id.*)

The conference officer denied Plaintiff's petition and sustained the subject property's tax roll real market values for the 2008-09 and 2009-10 tax years, concluding that, without "evidence to determine a capitalization rate, [he could not] reach a value conclusion.  In addition, the county provided evidence that government restrictions on the use of the subject property

/ / /

were considered in establishing the real market values on the rolls." (Ptf's Am Compl at 4.) In his discussion, the conference officer explained:

> "[n]o evidence was presented by the petitioner's representative to determine the overall capitalization rate to be utilized, which includes a base rate without restrictions, rate of government restrictions (risk) and rate for tax component. Rather the petitioner chose [to] utilize the capitalization rate implemented by the county for subsequent tax years. No evidence was submitted as to the derivation of that capitalization rate."

(*Id.*)

Plaintiff provided exhibits for the conference, which included six pages identified as "Cap Rate Data." (Stip Ex C at 13, 29-34.) At the conference, Plaintiff called two witnesses. (*See generally* Stip Ex D.) Plaintiff's first witness "Tim Coxx [Coxx] of Veridian Management * * * testified as to the appropriateness of the operating financials offered as evidence for the years ending 2007, 2008, and 2009." (Ptf's Am Compl at 4.) The conference officer found that "the county" did not dispute "[t]he concluded net operating income." (*Id.*) After Plaintiff finished questioning Coxx, the conference officer stated:

> "Well, let's not forget * * * it's incumbent upon you as the plaintiff * * * I mean this is a merits hearing, so we need you to reach a value for 2000 -- 1-1-2008 and 1-1-2009. * * * * * You kind of testified around about where we are with an NOI but we haven't gotten to – you know so I just want to caution you that to stop at this point we don't have an appraisal."

(Stip Ex D at 12.) In response, Plaintiff called as its second witness Charlie Gross (Gross), appraiser for the Lincoln County Assessor's office (County). (*Id.*)

Gross identified a one-page document labeled "Spyglass Apartments Income Approach 2010-11," utilizing a "Base capitalization rate" of 8.00 percent, a "Risk Adjustment" of 3.00 percent, and an "Actual Tax Rate" of 1.62 percent, for an "Overall cap rate" of 12.62 percent and an "Indicated RMV" of $593,645. (Stip Ex C at 4; Ex D at 13-14.) Gross testified that the income approach was "based on Wilsonville Heights that [he] recommended to the board" of

property tax appeals (board). (Stip Ex D at 14-15.) Gross testified that the subject property's 2008-09 and 2009-10 real market values were based on "a mass appraisal technique of trending" an appraisal of the subject property in 1994. (*Id.* at 15.) He acknowledged that *Wilsonville Heights* was not decided until 2003. (*Id.* at 15-16.) Gross disagreed that the *Wilsonville Heights* methodology should apply to the valuation of the subject property for the 2008-09 and 2009-10 tax years, asserting his appraisal for those years should "stand on its merits." (*Id.* at 17.) Gross responded affirmatively to the question: "if you use the same methodology that you used for 2010, for 2008 and 2009, using that high point of net operating income you would come up with the same values for 2008 and 2009 correct?" (*Id.*)

The conference officer denied Plaintiff's petition and Plaintiff appealed to this court. Plaintiff's original Complaint was filed November 27, 2012,[2] "which is the 90th day from the Department's Conference Decision, dated August 29, 2012." (Stip Facts at ¶9.) Plaintiff's original Complaint identified the tax years appealed as 2007-08 and 2008-09. (*Id.*) On November 29, 2012, Plaintiff filed an Amended Complaint identifying the tax years appealed as 2008-09 and 2009-10. (Stip Facts at ¶10.) Plaintiff's Amended Complaint was filed "more than 90 days after the Department's Conference Decision." (*Id.*) "At the time Plaintiff submitted its Amended Complaint to the Tax Court, neither [D]efendant had filed an answer or otherwise made an appearance in this matter." (Stip Facts at ¶11.)

Plaintiff asserted in its Amended Complaint that the subject property's real market value was no more than $494,855 for the 2008-09 tax year and no more than $487,140 for the 2009-10 tax year. (Ptf's Am Compl at 2.) Plaintiff asserted in its Motion for Summary Judgment that the subject property's real market value for the 2008-09 and 2009-10 tax years was no more than

---

[2] ORS 305.418(1) (2011) states, in part, that a complaint is deemed filed "on the date shown by the post-office cancellation mark stamped upon the envelope containing it * * *."

$593,650.  (Ptf's Mot for Summ J at 8.)  The 2008-09 and 2009-10 tax roll real market values

were $2,129,610.  (Stip Ex A at 3-4.)

## II.  ANALYSIS

There are two issues presented.  First, whether Plaintiff's Amended Complaint, changing

the tax years appealed, relates back under Tax Court Rule (TCR) 23 C[3] to the date of Plaintiff's

original Complaint.[4]  Second, whether the Department abused its discretion by sustaining the

subject property's tax roll real market values for the 2008-09 and 2009-10 tax years.

Plaintiff and the Department submitted motions for summary judgment.  The standard for

summary judgment is provided by TCR 47 C, which states in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits,
> declarations, and admissions on file show that there is no genuine issue as to any
> material fact and that the moving party is entitled to prevail as a matter of law.
> No genuine issue as to a material fact exists if, based upon the record before the
> court viewed in a manner most favorable to the adverse party, no objectively
> reasonable juror could return a verdict for the adverse party on the matter that is
> the subject of the motion for summary judgment."

A.      *Relation back of Plaintiff's Amended Complaint under TCR 23 C.*

The Department asserts as an affirmative defense that Plaintiff's appeal for the 2009-10

tax year was untimely.  (Def's Ans to Am Compl at 2.)  Plaintiff responds that its Amended

Complaint, amending the tax years appealed, relates back under TCR 23 C to the date of its

original Complaint, which was timely filed.  (*See* Ptf's Mot for Summ J at 3.)

/ / /

---

[3] TCR 23 is made applicable through the Preface to the Magistrate Division Rules, which states in pertinent part, that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

[4] ORS 305.280(1) (2011) states, in pertinent part:  "An appeal from a supervisory order or other order or determination of the Department of Revenue shall be filed within 90 days after the date a copy of the order or determination or notice of the order or determination has been served upon the appealing party by mail as provided in ORS 306.805."  The parties agree that Plaintiff's Amended Complaint was filed more than 90 days after the mailing date of the Department's conference decision.  Plaintiff's appeal for the 2009-10 tax year was untimely filed if Plaintiff's Amended Complaint does not relate back to the filing date of Plaintiff's original Complaint.

TCR 23 C states that, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  The Oregon Supreme Court has stated:

> "Not always clearly stated, but clearly implied in our decisions, is the rationale that an amended pleading should be permitted to relate back if the defendant is not prejudiced.  In those cases in which we held the amended complaint could relate back, the original complaint apprised defendant that the plaintiff was claiming relief because of defendant's conduct at a certain time and place.  If the amended pleading continues to claim relief because of that same conduct of defendant but upon a different theory, the defendant is not prejudiced because of a change in theory or a change in the cause of action.  The defendant is alerted to plaintiff's claim and has the opportunity to investigate and do whatever is believed necessary to protect itself.  The claim does not become stale because the legal theory or cause of action was changed in the amended complaint."

*Brackhahn v. Nordling* (*Brackhahn*)*,* 269 Or 667, 672, 526 P2d 221 (1974).

In discussing Oregon Rule of Civil Procedure (ORCP) 23 C, which is identical to TCR 23 C, the Oregon Supreme Court has stated:

> "The apparent rationale for allowing a post-limitation amendment to relate back to the pre-limitation pleading, and thereby defeat the statute of limitations, is that a party who is notified of litigation concerning certain conduct or a given transaction or occurrence through the original complaint, has been given the notice that the statute of limitations was intended to assure."

*Welch v. Bancorp Management, Inc.*, 296 Or 208, 221, 675 P2d 172, 181 (1983) (citations omitted).  "[T]he essential inquiry under ORCP 23 C is one of notice."  *Walters v. Hobbs* (*Walters*), 176 Or App 194, 208, 30 P3d 1214 (2001), *adh'd to as modified on recons.,* 177 Or App 527, 33 P 3d 1067 (2001).  "An amended complaint filed after the limitations period may relate back 'if the defendant would have been able to discern from the earlier pleading a potential for the additional basis of liability.' "  *Id.* at 208 (citations omitted).  The Oregon Court of Appeals "examine[s] the totality of the original complaint to determine whether it would provide

notice to defendant of an additional basis of liability." *Doughton v. Morrow*, 255 Or App 422, 434, 298 P3d 578 (2013).

Plaintiff notes that the "Conference Decision being appealed was attached to Plaintiff's Complaint and the correct tax years were noted therein on page 1 of that Decision." (Ptf's Mot for Summ J at 3.) Citing *Brackhahn*, Plaintiff argues that "Defendants knew which tax years were at issue in this matter [and] the correction of the clerical error in the original Complaint caused no prejudice to either [D]efendant." (*Id.* at 4.) The Department responds that its "decision created the right of appeal to the tax court, but [its] decision is not the conduct, transaction, or occurrence from which [P]laintiff claims relief." (Def's Reply at 2.) The Department acknowledges that "tax years or assessment years may be combined in a single case," but notes that "each tax year stands on its own. An alleged gross valuation error for one year does not automatically give notice of a gross valuation error for a prior year * * *." (Def's Br in Supp at 8, *citing Esco Corp. v. Dept. of Rev.*, 307 Or 639, 646, 772 P2d 413, 417 (1989) (internal quotation marks omitted).) The Department asserts:

> "The assessment roll values for the 2008-09 tax year and 2009-10 tax year arose out of unrelated conduct, transactions, or occurrences, and, consequently, a request for relief for the 2009-10 tax year does not relate back to a request for relief for the 2008-09 tax year."

(Def's Mot for Summ J at 7.)

The Department compares this case to *National Manufacturing., Inc. v. Dept. of Rev.* (*Nat'l Mfg*), 12 OTR 32, 34 (1991). (Def's Mot for Summ J at 8.) In *Nat'l Mfg*, the plaintiff had initially filed a petition with the department under ORS 306.115(3) (1987) for the 1988-89 tax year.[5] *Nat'l Mfg*, 12 OTR at 33. Eight months later, the plaintiff filed an amended petition with

---

[5] ORS 306.115(3) (1987) "allow[ed] the department to correct a tax roll for the current assessment year and two preceding years under certain conditions." *Nat'l Mfg*, 12 OTR at 32.

the department for the 1987-88 through 1989-90 tax years and added an additional property tax account. *Id.* The court held that the plaintiff's amended petition did not relate back to the filing date of the original petition because "[t]here was nothing in the earlier petitions from which [the department] could infer the claims added by the 'amended petition.' " *Id.* at 34. Furthermore, at the time the plaintiff filed its amended petition, the department no longer had authority to correct the 1987-88 tax year under ORS 306.115(3) (1987). *Id.*[6]

The Department argues that, because the relief sought by Plaintiff is for two different tax years and each tax year stands alone, Plaintiff's challenge to the 2009-10 tax year cannot have arisen out of the same "conduct, transaction, or occurrence" as the 2008-09 tax year. The Department asserts that the property tax and assessment rolls for each of those two tax years arose out of "unrelated conduct, transactions, or occurrences." The court might agree with the Department if Plaintiff appealed from separate property tax statements or board orders for the 2008-09 and 2009-10 tax years. However, Plaintiff appeals from a Conference Decision and that is the only basis for Plaintiff's appeal.

This case is distinguishable from *Nat'l Mfg* because Plaintiff appeals from the Department's Conference Decision rather than a property tax statement or a board order. That distinction is important because the court applies a different standard of review in this case. The court's review of an appeal from a property tax statement or board order is *de novo*. ORS 305.425(1). By contrast, the court's review of the Department's Conference Decision is under an abuse of discretion standard and is limited to the record before the Department. *Thomas Creek Lumber & Log Co. v. Dept. of Rev.,* 19 OTR 103, 106 (2006). Plaintiff's

---

[6] The court explained that, as of January 1990 when the amended petition was filed, the department "had authority to correct 1990 as the 'current assessment year' and 1988 and 1989 as the 'two preceding years.' [The department] was without authority to correct the roll for 1987-1988 and its dismissal of plaintiff's petition for that year was correct." *Nat'l Mfg*, 12 OTR at 34.

Amended Complaint adding the 2009-10 tax year does not alter the conference record or necessitate that Defendants submit additional evidence. Defendants are not prejudiced by Plaintiff's Amended Complaint adding the 2009-10 tax year.

The court concludes that Plaintiff's Amended Complaint, adding the 2009-10 tax year and removing the 2007-08 tax year, "arose out of" the Department's Conference Decision and relates back to the filing date of Plaintiff's original Complaint. The Department's Conference Decision, which was attached to Plaintiff's original Complaint, was issued for the 2008-09 and 2009-10 tax years and, therefore, notified Defendants that it was the "act, order, omission or determination of * * * [t]he Department" appealed by Plaintiff. ORS 305.275(1)(a)(A)[7]; *see also* TCR-MD 1 B ("A copy of the order or notice, if any, shall be attached to the original complaint"). In other words, Defendants could have discerned from Plaintiff's original Complaint that the 2009-10 tax year was at issue in this appeal because it was one of the two tax years at issue in the Department's Conference Decision.

For the reasons stated above, Plaintiff's Amended Complaint relates back to the filing date of its original Complaint under TCR 23 C. The Department's affirmative defense is denied.

B.    *Abuse of discretion review of the Department's Conference Decision*

The second issue is whether the Department abused its discretion when it sustained the subject property's tax roll real market values for the 2008-09 and 2009-10 tax years.

The parties agree that the court's review is limited to the record developed at the Department and that the standard of review is abuse of discretion. (Ptf's Mot for Summ J at 4; Def's Br in Supp at 3-4); *see also Granpac Foods, Inc. v. Dept. of Rev.*, TC-MD No 020064D, WL 23883579 at *2 (Jul 10, 2003) (although the Department "divides its discretionary review

---

[7] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2011.

process into two steps * * * [t]here is no statutory basis for two different standards of review by this court"). Under an abuse of discretion standard, the court will only overturn the Department's decision if it "acted 'capriciously or arrived at a conclusion which was clearly wrong' " based on the record before the department. *Resolution Trust Corp. v. Dept. of Rev.* (*Resolution Trust*), 13 OTR 276, 279 (1995), *quoting Martin Bros. v. Tax Commission,* 252 Or 331, 338, 449 P2d 430 (1969) (citations omitted). The court cannot "substitute its own view for the administrator's judgment upon matters committed to his determination, if the record in the case supports the finding under the applicable law." *Rogue River Pack. v. Dept. of Rev.* (*Rogue River*), 6 OTR 293, 301 (1976).

> This court has recently explained its review under an abuse of discretion standard:
>
> " 'Discretion' describes the power of the department to choose between several legally permissible courses of action. *State v. Caruso,* 289 Or 315, 322, 613 P2d 752 (1980); *State ex rel Maizels v. Juba,* 254 Or 323, 330, 460 P2d 850 (1969). As a standard of review, 'abuse of discretion' is relatively without content, as it describes a conclusion to be reached and not the analysis used to reach it. *Liberty Northwest Ins. Corp. v. Jacobson,* 164 Or App 37, 45, 988 P2d 442 (1999). 'The essential question is whether the choice made is consistent with one or several objectives to be served by vesting discretion in the decision maker, under circumstances pertinent to the decision to be made.' *Id.; see generally Dickenson v. Davis,* 277 Or 665, 673-76, 561 P2d 1019 (1977) (discussing the nature of discretion in administrative proceedings)."

*Willamette Estates II, LLC v. Marion County Assessor*, TC-MD No 120110C, WL 5471735 at *3 (Nov 8, 2012).

Plaintiff makes several arguments in support of its contention that the Department abused its discretion. First, Plaintiff argues that the conference officer abused his discretion by failing to consider and rely upon capitalization rate evidence included in Plaintiff's written exhibits. (Ptf's Mot for Summ J at 5.) Second, Plaintiff argues "it was an abuse of discretion for the [c]onference [o]fficer to find that the government restrictions on use were considered in

establishing the 2008 and 2009 roll values as those restrictions must not only be considered, they must be considered in conformance with Oregon law, namely *Wilsonville Heights*." (*Id.* at 7.) Third, Plaintiff argues that, "by failing to fully develop the record if he felt the evidence was not sufficient to enable him to make a decision, the [c]onference [o]fficer abused his discretion." (Ptf's Resp at 5.) The court considers each of Plaintiff's arguments in turn.

1.      *Failure to consider capitalization rate evidence*

The conference officer concluded that, "[l]acking evidence to determine a capitalization rate, the [D]epartment cannot reach a value conclusion." (Ptf's Am Compl at 4.) Plaintiff asserts that "[t]he record contained sufficient evidence to allow the [c]onference [o]fficer to determine an appropriate capitalization rate." (Ptf's Mot for Summ J at 5.) Specifically, Plaintiff stated that its evidence submitted at the conference "contained capitalization rate data [relevant] to the tax years at issue" and "its income approach from the 2010 tax year at the county board." (*Id.* at 5-6.) The Department responds that "Plaintiff did not submit an appraisal or testimony that sufficiently supported a reduction to roll values. For example, [P]laintiff did not submit testimony regarding its purported 'Cap Rate Data' in Exhibit 5." (Def's Br in Supp at 4.) Plaintiff notes that neither testimony nor an appraisal is required under the Department's rules. (Ptf's Mot for Summ J at 5; Ptf's Resp at 4.)

OAR 150-306.115-(C)(5) states that "[t]he burden of proof in all conferences is on the person seeking relief. A preponderance of the evidence is sufficient to sustain the burden of proof." The conference officer correctly identified the burden of proof as falling on Plaintiff. (Ptf's Am Compl at 4.)

Plaintiff argues, first, the conference officer failed to rely on the capitalization rates for sales included in Plaintiff's exhibits. The conference record includes an exhibit identified as

"Cap Rate Data."  The exhibit includes six one-page summaries of multi-family property sales ranging from March 23, 2006, to October 1, 2009.  (Stip Ex C at 29-34.)  The properties were located in Tillamook, Lincoln City, and Monmouth, Oregon.  (*Id.*)  The summaries state capitalization rates ranging from 7.72 to 8.65 percent.  (*Id.*)  The record includes no discussion of the sales during the conference.  (*See generally* Stip Ex D.)  From a review of the conference record in its entirety, the court cannot determine who selected the sales, how the sales were selected, whether the sales were verified, or who determined the capitalization rates for each sale.  *See* OAR 150-308.205-(A)(2)(c) (transactions "must be verified to ensure they reflect arms-length market transactions").  The conference officer did not abuse his discretion or clearly err in declining to rely on the sales included in Plaintiff's exhibits.

Plaintiff argues, second, that the conference officer failed to rely on the 2010-11 overall capitalization rate determined by the County.  The conference record includes an exhibit that Gross identified as the 2010-11 income approach calculation for the subject property that the County presented to the board.  (Stip Ex C at 4; Ex D at 13-14.)  The County's 2010-11 income approach utilized a "Base capitalization rate" of 8.00 percent, a "Risk Adjustment" of 3.00 percent, and an "Actual Tax Rate" of 1.62 percent, for an "Overall cap rate" of 12.62 percent and an "Indicated RMV" of $593,645.  (*Id.*)  During the conference, Gross responded affirmatively to the question:  "if you use the same methodology that you used for 2010, for 2008 and 2009, using that high point of net operating income you would come up with the same values for 2008 and 2009 correct?"  (Stip Ex D at 17.)

The court agrees with the Department that "it is well-established that for property assessment purposes each year 'stands on its own.' "  (Def's Mot for Summ J at 5-6, *citing Johnson v. Dept. of Rev.*, TC No 3334 (July 13, 1993).)  The assessment date for the 2010-11 tax

year was January 1, 2010, whereas the assessment dates for the 2008-09 and 2009-10 tax years were January 1, 2008, and January 1, 2009, respectively. ORS 308.007; ORS 308.210. The conference record includes no evidence suggesting that the capitalization rate selected by the County as of January 1, 2010, was applicable as of January 1, 2008, or January 1, 2009. For instance, the record includes no evidence on market changes, or lack thereof, between January 1, 2008, and January 1, 2010. The court concludes that the conference officer did not abuse his discretion or clearly err in declining to utilize the County's 2010-11 capitalization rate for the 2008-09 and 2009-10 tax years.

Based on the conference record, the court finds the conference officer did not abuse his discretion in determining that he "lack[ed] evidence to determine a capitalization rate" and that Plaintiff failed to meet its burden of proof. (Ptf's Am Compl at 4.)

2. *Erroneous finding that government restrictions on use were considered in determining the subject property's 2008-09 and 2009-10 tax roll real market values*

As an additional basis for his decision, the conference officer concluded that "the [C]ounty provided evidence that government restrictions on the use of the subject property were considered in establishing the real market values on the rolls." (Ptf's Am Compl at 4.) Plaintiff asserts that "[t]he record clearly showed that the assessor did not consider *Wilsonville Heights* in determining the roll values for the 2008 and 2009 tax years." (Ptf's Mot for Summ J at 6.) Plaintiff argues that "those restrictions must not only be considered, they must be considered in conformance with Oregon law, namely *Wilsonville Heights*." (*Id.* at 7.)

Even if the court agrees with Plaintiff that the conference record establishes that the subject property's 2008-09 and 2009-10 tax roll real market values were not determined in

/ / /

FINAL DECISION  TC-MD 120823N                                                                                          13

accordance with *Wilsonville Heights Assoc., Ltd. v. Dept. of Rev.* (*Wilsonville Heights*), 17 OTR 139 (2003),[8] that is not sufficient to overturn the conference officer's conclusion that he "[could] not reach a value conclusion." This court's decision in *Wilsonville Heights* confirms that, when using the direct capitalization method to determine the value of a low-income housing project, the capitalization rate selected should be "a reflection of general-market realities" as of the assessment date. *Id.* at 155, 159. *Wilsonville Heights* did not establish a specific capitalization rate to be used in all cases for the valuation of low-income housing projects. Whether the subject property's 2008-09 and 2009-10 tax roll real market values properly accounted for government restrictions does not affect the conference officer's finding that the record lacked evidence from which he could determine an appropriate capitalization rate.

3. *Failure to obtain additional evidence of the capitalization rate*

Plaintiff argues that, "by failing to fully develop the record if he felt the evidence was not sufficient to enable him to make a decision, the [c]onference [o]fficer abused his discretion." (Ptf's Resp at 5.) In support, Plaintiff cites *Rogue River Pack*, in which this court stated that "an agency abuses its discretion when it does not act upon the facts presented to it *or fails to obtain the factual data necessary for a proper result.*" (*See id.* (Ptf's emphasis).)

The court finds nothing in prior case law or the Department's rules suggesting that the Department is required to request or otherwise gather additional evidence if it finds the evidence submitted by Plaintiff to be insufficient. In *Resolution Trust*, the plaintiff "claim[ed] defendant

---

[8] The court looks to the Tax Court's decision in *Wilsonville Heights* with respect to the selection of a appropriate capitalization rate because that issue was not before the Oregon Supreme Court on review:

"the Tax Court employed multiple methods for valuing the subject property: in addition to its 'VPWR-VGI = VTI' approach, it employed two income approaches utilizing both direct and yield capitalization methods. The department assigns error to only the Tax Court's 'VPWR-VGI = VTI' approach. We limit our inquiry to that approach."

*Wilsonville Heights Assoc., Ltd. v. Dept. of Rev.*, 339 Or 462, 468, 122 P3d 499 (2005).

has a duty to go outside the administrative record to determine whether it has supervisory jurisdiction." 13 OTR at 279. This court rejected that argument, stating "[t]here is no duty imposed by ORS 306.115 other than a general obligation to be informed about the property tax system." *Id.* The court observed that, under the Department's administrative rule, it "may ask for additional information; but it is not obligated to do so." *Id.*

During oral argument, Plaintiff argued that *Columbia Sportswear v. Washington County Assessor* (*Columbia Sportswear*), TC-MD No 100043D, 2011 WL 579044 (2011) supports its contention that the Department was required to obtain additional evidence when it found the conference record lacking. (*See* Ptf's Ltr at 1, Aug 7, 2013.) In *Columbia Sportswear*, this court considered whether the Department complied with its own administrative rule, OAR 150-306.115-(C)(6), which stated in part: "If an appraisal report is not exchanged timely, the conference officer may exclude the report and any testimony related to it." WL 579044 at *3. On the request of the county, the conference officer in *Columbia Sportswear* allowed additional evidence submitted after the merits conference and convened a second merits conference. *Id.* at *1. The court concluded that the conference officer did not violate the rule, explaining:

> "The rule does not require that the conference officer exclude evidence that fails to meet the exchange rule. The rule specifically gives the conference officer discretion ('may') to exclude the evidence and testimony. In the case before the court, the conference officer did not exercise his discretion to exclude the study or the related testimony. The conference officer's decision was not contrary to the rule."

*Id.* at *3.

The court disagrees that *Columbia Sportswear* requires the Department to request additional evidence to supplement the record after the conclusion of the conference. Rather, the court in *Columbia Sportswear* found that the conference officer had discretion whether to

exclude evidence that was not submitted prior to the conference. *Columbia Sportswear* is further distinguishable from this case because the county requested to submit additional evidence. There is nothing in the conference record in this case indicating that Plaintiff requested to submit additional evidence or schedule a subsequent hearing after the conference.

### III.  CONCLUSION

After careful consideration, the court concludes that Plaintiff's Amended Complaint relates back under TCR 23 C to the date of Plaintiff's original Complaint. The Department's affirmative defense is denied. The court further concludes that the Department did not abuse its discretion by sustaining the subject property's tax roll real market values for the 2008-09 and 2009-10 tax years. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant Department of Revenue's affirmative defense is denied. Plaintiff's Amended Complaint relates back under TCR 23 C to the date of Plaintiff's original Complaint.

IT IS FURTHER DECIDED that Defendant Department of Revenue did not abuse its discretion by sustaining the subject property's tax roll real market values for the 2008-09 and 2009-10 tax years. Plaintiff's appeal is denied.

Dated this ____ day of December 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

***If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.***
***THIS DOCUMENT WAS SIGNED BY MAGISTRATE ALLISON R. BOOMER ON DECEMBER 3, 2013, AND FILED, ENTERED AND MAILED THE SAME DAY.***