Argued September 5, 1968, affirmed January 22, 1969

# THE MARTIN BROS. CONTAINER AND TIMBER PRODUCTS CORP., *Appellant, v.* STATE TAX COMMIS-SION, *Respondent.*

449 P. 2d 430

*Irving Rand,* Portland, argued the cause for appellant. With him on the briefs was George W. Mead, Portland.

*Theodore de Looze,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General and Richard A. Uffelman, Assistant Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

The defendant State Tax Commission levied a corporate excise tax deficiency assessment against plaintiff for the year 1963. Plaintiff brought a proceeding in the Oregon Tax Court to set aside the assessment. 3 OTR Adv Sh 117 (1967). It appealed to this court from an adverse determination there.

Plaintiff was the owner of a sawmill which was destroyed by fire in the year 1963. At the time of its destruction, the mill had a depreciated value for tax purposes (adjusted basis) of $57,683.95. The proceeds from fire insurance were $490,631.77. The loss was paid by the insurer during the year of destruction. Plaintiff rebuilt the mill. By December 31, 1964, it had expended $104,578.73 toward the construction of the new mill. Subsequent to that date plaintiff completed the rebuilding at a cost in excess of the insur-

ance proceeds. The taxable gain upon which taxes were assessed was the sum of $386,053.04, which was the difference between insurance proceeds and the sum expended in rebuilding prior to December 31, 1964.

■ Plaintiff first contends that there was no taxable gain at all. It argues that the applicable statute is ORS 317.231(1). It provides:

> "No gain or loss shall be recognized if property held for productive use in trade or business * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or * * *."

Plaintiff says that one mill was exchanged for another through the medium of the fire and the resulting insurance. Plaintiff's contention might be more plausible were it not for ORS 317.249 which covers the specific situation in question and therefore nullifies plaintiff's argument that the other statute is applicable. The latter statute provides:

> "(1) If, after December 31, 1952, property (as a result of its destruction in whole or in part, * * *) is compulsorily or involuntarily converted:
>
> "(a) Into property similar or related in service or use to the property so converted, no gain shall be recognized.
>
> "(b) Into money * * * the gain, if any, shall be recognized except to the extent provided in subsection (2) of this section.
>
> "(2) If the taxpayer, during the period specified in subsection (3) of this section, for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * *.

"(3) The period referred to in subsection (2) of this section shall be the period beginning with the date of the disposition of the converted property, * * * and ending:

"(a) One year after the close of the first tax year in which any part of the gain upon the conversion is realized; or

"(b) Subject to such terms and conditions as may be specified by the commission, at the close of such later date as the commission may designate upon application of the taxpayer made at such time and in such manner as the commission may by regulations prescribe.

"* * * * *."

The property was not involuntarily exchanged for another mill but for money which plaintiff chose to convert into another mill. ORS 317.249(1)(b) specifically covers that situation and therefore the statute for which plaintiff contends is not applicable.

Plaintiff next argues that ORS 317.249, if applicable, should be construed to relieve the taxpayer of any tax under the facts of this case. It makes the same argument for the provisions of section (1)(a) of this statute as it made for the terms of ORS 317.231 (1). The answer is the same as that given to the previous contention. The property was involuntarily converted into money, and not into property similar or related in service or use, and, therefore, section (1)(b) applies, not section (1)(a) as contended by plaintiff.

■ Plaintiff next contends that if ORS 317.249(1) (b) is applicable to the present factual situation, plaintiff, nevertheless, was entitled to have the gain not recognized under the exception provided in sections (2) and (3) of the statute because it had reinvested the money received from the insurance in property similar to that destroyed within the time therein specified.

Section (1)(b) says that the gain shall be recognized except as provided in section (2). Section (2) states that if similar property is purchased within the time specified in section (3) the gain will be recognized only to the extent that the amount realized upon conversion exceeds the cost of the purchased property. Section (3) provides that the purchase must be made (a) within one year after the close of the first tax year in which the gain from the conversion is realized (in this case December 31, 1964), or (b) at the close of such later date as the commission may designate upon application of the taxpayer made at such time as the commission, by regulation, may prescribe.

Plaintiff first argues that the words "purchases other property" in section (2) are not defined in the tax law, and it is therefore reasonable to assume that these words mean "getting under way" when they have reference to a large and complex reconstruction program. This, it claims, was done by the expenditure of $104,578.73 prior to December 31, 1964. Therefore, it contends that none of the subsequent sums expended in the completion of the project should be subject to tax. The provisions of section (2) require *a purchase* of like property within the time allotted in section (3). If the legislature had intended as plaintiff contends, it could and probably would have used "begins a program of purchase" or similar language to express its intention. We reject plaintiff's contention as not being a reasonable construction of the statute.

■ If plaintiff's purchases after December 31, 1964, may be used to reduce the gain recognized for tax purposes, the purchases must have been made within the time specified in section (3)(b). In order to be allowed the additional time therein specified, application for it must have been made within such time as the com-

mission prescribed by regulation. The regulations covering ORS 317.249 adopt the regulations covering ORS 316.295. The latter regulations provide that the application under section (3)(b) for time in addition to that provided in section (3)(a) shall be made prior to the expiration of the year after the year in which the gain from the conversion was realized (December 31, 1964), unless the taxpayer shows to the satisfaction of the commission: 1. reasonable cause for not having filed within the required time, and 2. the filing of the application was within a reasonable time after the expiration of the required period of time. Plaintiff did not make such application until April of 1966. It was dismissed by the commission as not having been made within a reasonable time after December 31, 1964, as required by regulation. Plaintiff complains of the tax court's refusal to hold that the dismissal was improper.

The reason given by plaintiff for the late date upon which the application was filed was that it was not aware of the Oregon regulations. In view of the provisions of ORS 317.249(3)(b) which refer to the regulation in question, plaintiff must have been equally unaware of the provisions of the Oregon statute. Apparently, the application would never have been made had not the commission notified the plaintiff of the levy of the deficiency. The legislature delegated the authority to the commission to designate the time within which the application for additional time to reinvest should be filed. The commission exercised the delegated authority by establishing the two requirements that must be fulfilled "to the satisfaction of the commission." The regulation has the effect of law, *U.P.R.R. Co. v. Tax Commission*, 240 Or 628, 402 P2d 519 (1965), and allows an exercise of discretion

by the commission. Even though the proceeding before the tax court is *de novo,* where the legislature has given the tax commission discretion to decide whether something is reasonable, we believe the function of the court is to decide whether there has been any abuse of discretion and not to retry the original determination of the commission. We adopt the language of the tax court's opinion:

> "Considering the discretion which the legislature has given to the tax commission this court in this instance should confine its review of the commission's denial of plaintiff's application to a determination of whether the commission exercised its discretion judiciously and not capriciously and arrived at no conclusion which was clearly wrong * * * *."

We agree with the tax court that there is no indication that the commission acted capriciously or arrived at a conclusion which was clearly wrong. *Richardson v. Neuner,* 183 Or 558, 564, 194 P2d 989 (1948). In fact, the commission appears to this court to have acted correctly.

▮ Plaintiff argues that the entire reinvestment of the money in the new mill was done within a reasonable time and therefore its application for additional time should not have been denied. Be that as it may, reasons for the allowance of an extension of time are not reasons which justify the failure to request an extension of time in conformance with the statute and the regulations thereunder. A proper request for an extension of time was a necessary prerequisite to an allowance of any such extension regardless of how good the reasons were for an extension. We concur with the trial court that the foregoing claim of error is without substance.

■ Plaintiff's next assignment of error contends that, if there was a taxable gain under ORS 317.249(1)(b), the commission mistakenly computed the gain upon which the tax was figured. The commission computed the gain as being the amount realized from the insurance less the sum invested in the new mill prior to December 31, 1964. The words of the statute, ORS 317.249(2), are as follows:

> "* * * the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * *."

Plaintiff contends that the words "to the extent" mean that only that proportion of the gain should be subject to tax which the amount reinvested bears to the amount realized upon the involuntary conversion. Thus, if a corporation by reason of conversion of its property received $100,000, had a gain of $10,000 and reinvested only $50,000 of the amount realized within the allowed time in similar property, plaintiff would contend that only one-half of the gain, or $5,000, should be recognized.

The only difficulty with plaintiff's contention is that the statute says otherwise. The gain that is recognized is the excess of the amount realized ($490,631.77) over the cost of the new property ($104,578.73) which is the sum of $386,053.04. The statute says nothing about proportioning the gain. Plaintiff urges its interpretation is proper because the commission's computation results in a tax on gross receipts. The argument is fallacious because the amount upon which the tax is computed, by the terms of the statute, cannot be more than the total gain. Had the taxpayer invested in the new plant a sum less than

the adjusted basis on the plant destroyed and the commission had taxed the entire difference between the insurance and the amount reinvested, plaintiff's contention of taxing gross receipts would be valid.

The opinion of the tax court is affirmed.