Argued and submitted March 8, affirmed April 18, reconsideration denied
May 31, 1989

## ESCO CORPORATION,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2605; SC S35035)

772 P2d 413

David P. Roy, of Rappleyea, Beck, Helterline, Spencer & Roskie, Portland, argued the cause for appellant. With him on the briefs were Clarence Greenwood and Patricia S. Eiting, Portland.

Ted E. Barbera, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Marilyn J. Harbur, Assistant Attorney General, and Dave Frohnmayer, Attorney General, Salem.

JONES, J.

## JONES, J.

The main issue in this case is whether this taxpayer's appeal under the "normal" procedure, *see* ORS 305.275, to the Department of Revenue (Department) of an alleged over-valuation of property in one tax year was also sufficient to invoke the Department's supervisory authority to correct erroneous valuations made in earlier years. *See* ORS 306.115(3). We hold that it was not sufficient and affirm the tax court's grant of summary judgment to the Department.[1]

## I. FACTS

In conducting our review of the tax court record on summary judgment, ORS 305.445, we view the facts in the light most favorable to taxpayer. *See Uihlein v. Albertson's, Inc.,* 282 Or 631, 634, 580 P2d 1014 (1978). We accept as correct the following "Statement of Facts" from taxpayer's brief:

"On January 1, 1985, the Multnomah County Tax Assessor placed a true cash value on the Property [taxpayer's Portland manufacturing facility] of $29,305,570. [Taxpayer] appealed that valuation to the Multnomah County Board of Equaliza-tion. That appeal was denied and a true cash value for the Property of $29,305,570 was left on the Assessor's tax roll. On September 25, 1985, [taxpayer] filed a Petition for Review with the Department for a review of that true cash value determina-tion (the 'Petition'). The Petition claimed a true cash value for the Property of $14,911,356 for the 1985-86 assessment year. The Department took no action on [taxpayer's] Petition for over 12 months. On October 3, 1986, [taxpayer] appealed to the Tax Court pursuant to ORS 305.560(5).

"Two months after [taxpayer] filed its appeal to the Tax Court (i.e., November of 1986) the Department began nego-tiations with [taxpayer] to resolve the disputed valuation. Those negotiations resulted in a settlement of the 1985-86 tax year valuation by stipulated agreement that the true cash value of the Property for the 1985-86 assessment year did not exceed $12,318,559. The negotiations between the parties also resulted in an agreement that the Property's 1984-85 and

---

[1] Tax Court Rule 47 (hereinafter cited as "TCR") incorporates ORCP 47, "Sum-mary Judgment." Summary judgment "shall be rendered * * * if the pleadings, deposi-tions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." TCR 47C (ORCP 47C).

1986-87 true cash values did not exceed $14,112,510 and $13,500,010, respectively.

"The 1985-86 true cash value of $29,305,570 was assigned by the Department based upon its trending of the 1981 value for the Property. The 1981 true cash value was initially determined by a 1981 field appraisal by the Department's industrial appraisal section. When the Department conceded its gross valuation error for the 1985-86 tax year, [taxpayer] requested a correction in the 1983-84 and 1984-85 valuations pursuant to the Department's supervisory relief powers under ORS 306.115(3)(b). The Department rejected [taxpayer's] request for a correction of the gross valuation error for 1983-84 and refused to settle the 1983-84 assessment year valuation dispute. [Taxpayer] filed a 'protective appeal' with the Department for the 1983-84 year on December 24, 1986.

"On April 22, 1987, the Department issued its Opinion and Order No. 86-4696, holding that the Department lacked authority under ORS 306.115 to correct the tax roll for the 1983-84 tax year because [taxpayer] had not made written application for such a correction during 1985.

"[Taxpayer] appealed the Department's Opinion and Order No. 86-4696 to the Oregon Tax Court on June 20, 1987. The Tax Court, after two hearings on the matter, granted summary judgment in favor of the Department on March 7, 1988. [Taxpayer] filed a Notice of Appeal of that summary judgment determination with this Court on March 23, 1988." (Citations omitted.)

## II. ANALYSIS

Two methods exist to correct an erroneous determination of a property's true cash value. The first is the "normal" appeals procedure. ORS 309.100(1) provides that "an owner * * * of any taxable property * * * may petition [the county board of equalization] for reduction and equalization of the true cash value" of a particular property. ORS 305.275(2) affords a "taxpayer * * * aggrieved by an order of a county board of equalization" a right to appeal to the Director of the Department. Taxpayer challenged the order assessing the property's true cash value in 1985-86 using this method.

The Department also has supervisory authority under ORS 306.115(3) to correct an assessment for "the two assessment years immediately preceding the current assessment year" if:

"(a)   The assessor or taxpayer has no statutory right of appeal remaining and the department determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal; or

"(b)   The department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."[2]

" 'Current assessment year' means the calendar year in which the need for the change or correction *is brought* to the attention of the department." ORS 306.115(4) (emphasis added). Although the Department could correct an error if it discovered an error on its own, the phrase "is brought" connotes someone outside the Department bringing the need for a change or correction to the Department's attention. OAR

---

[2] In 1985, ORS 306.115 provided in part:

"(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may do any act or give any order to any public officer or employe that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States. Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under subsections (2) to (4) of this section.

"* * * * *

"(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current assessment year and for either of the two assessment years immediately preceding the current assessment year if for the year to which the change or correction is applicable:

"(a) The assessor or taxpayer has no statutory right of appeal remaining and the department determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal; or

"(b) The department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."

On July 16, 1987, Oregon Laws 1987, chapter 656, amended ORS 306.115. ORS 306.115 now has several new provisions, and many older subsections are renumbered. Oregon Laws 1987, chapter 656, section 2, provides that "in the case of an appeal pending on July 1, 1987, that involves the correction of a gross error, the amendments to ORS 306.115 by section 1 of this Act that create a new paragraph (b) of subsection (3) shall not apply." This case was pending on July 1, 1987, and involves the correction of gross error.

150-306.115(3)(b)(A) specifies that the Department will consider the need for a correction under ORS 306.115(3)(b) in an appeal when "[i]t is likely that a gross error in value exists."[3]

The record indicates that taxpayer first expressly sought to invoke the Department's supervisory authority over tax year 1983-84 in December 1986.[4] Thus, unless taxpayer *implicitly* invoked the Department's supervisory authority at an earlier date, 1986 is the "current assessment year" under ORS 306.115(3) and (4). The two immediately preceding assessment years would thus be 1985 (tax year 1985-86) and 1984 (tax year 1984-85). Because tax year 1983-84 occurred prior to these two years, the Department had no supervisory authority to make a change or correction to the 1983-84 valuation unless taxpayer's normal appeal, filed in 1985-86, invoked the Department's supervisory authority.

---

[3] OAR 150-306.115(3)(b)(A) continues:

"*Gross errors in value will be determined by the size of the error. To meet this* standard, there must be a claim of a gross error and the presentation of adequate information to support the claim.

"(i)  A claim of gross error exists if the difference between the requested value and the true cash value on the roll is greater than or equal to thirty (30) percent of the true cash value on the roll.

"(ii)  To support the claim the taxpayer or assessor must present either evidence of a bona fide arms-length sale of the subject property which reasonably reflects the value of the property as of the assessment date at issue or a prepared appraisal of the subject property. An appraisal must be in writing, reasonably reflect the value of the property as of the assessment date at issue, and utilize the sales comparison, cost or income approach to valuation."

[4] The January 4, 1988, transcript of the oral argument on the Department's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment contains the following discussion between the court and Clarence H. Greenwood, plaintiff-taxpayer's counsel:

"THE COURT:  Mr. Greenwood, from a factual point of view, though, do you agree with Ms. Harbur's [Department's counsel] statement that the first time you brought this to the attention of the department was when you filed your December '84 protective appeals?

"\* \* \* \* \*

"MR. GREENWOOD:  After we lodge[d] the '85 case with this Court, the department entered into settlement negotiations with the company and I believe it was approximately December 15th, 1986, grounds for settlement basically emerged. The departmental revenue appraisers agreed with the—the conceptual framework that the company was advancing. At that time the company said now that we have shown that '85 was more than 100 percent overassessed, we want you to go back under the supervisory power and correct the prior two years. That was a oral communication, done in a conference. That's all."

We do not decide whether an oral communication was sufficient to invoke the Department's supervisory authority.

■ Taxpayer argues that the Department should have used its supervisory power to correct the 1983-84 assessment because the 1985 filing of a petition to review the assessment gave the Department "reason to correct the roll" under ORS 306.115(3)(b) for the two years preceding tax year 1985-86. The tax court held, however, that a petition under the normal appeals procedure does not automatically invoke the Department's supervisory authority for the two assessment years immediately preceding the year in which the petition was filed even though it alleges a valuation error meeting the "gross error" standard. We agree.

The legislative history of ORS 306.115(3) shows that supervisory authority applies only in matters outside the normal appeals process.[5] Moreover, "ORS 306.115(3) is an *extraordinary remedy.*" OAR 150-306.115(2) (emphasis added). Because ORS 306.115(3) involves an extraordinary remedy and provides the Department with authority to correct errors outside the normal appeals procedure, an appeal under the normal procedure, standing alone, does not invoke supervisory authority.[6]

---

[5] James Manary, Administrator of the Assessment and Appraisal Division of the Department, testified with regard to Senate Bill 68, which amended ORS 306.115 in 1983, that "the current statutes which are the ones that are being amended * * * place certain limits on the Department of Revenue for *correcting errors outside of the normal appeals process.* If they fail to go to the board, in other words." Senate Committee on Revenue, March 10, 1983, tape 52, side a (emphasis added). The Staff Measure Analysis of Senate Bill 68 states: "Providing means by which the Department of Revenue has authority to order corrections in the roll when it appears a major injustice would occur *and the individual has no other recourse.*" (Emphasis added.) Barbara Seymour, Legislative Counsel, pointed out that the amendments "address themselves mainly to corrections to the assessment tax rule, and the department's supervisory powers. In that instance, *when there is no appeal to the board of equalization.*" Senate Committee on Revenue, March 22, 1983, Tape 61 (emphasis added).

Additionally, OAR 150-306.115(2) states that ORS 306.115(3) "provides the authority for the department to consider the substantive issue in an appeal (i.e., value of the property * * *) *when it otherwise would not have authority to do so.*" (Emphasis added.)

[6] This is consistent with the Staff Measure Analysis of Senate Bill 68:

"Problem addressed.

"As a result of a recent court decision, the Department of Revenue under their general supervisory authority over the property tax system, is anticipating a large increase in direct appeals by individuals *circumventing the normal appeals process.*

"Function and purpose of measure as reported out.

"*To restrict appeals heard by the Department of Revenue under their super-*

Taxpayer filed its petition in September 1985, alleging an error in the 1985-86 assessment. Taxpayer did not expressly seek supervisory relief for 1983-84. Therefore, we need not decide whether a petition filed according to the normal procedure which also expressly seeks relief for preceding tax years invokes the Department's supervisory authority.

Taxpayer argues, however, that the Department has supervisory authority over 1983-84 because taxpayer's 1985 petition gave the Department "actual" notice in 1985 of a gross valuation error for 1983-84:

"The petition filed by [taxpayer] alleged a gross valuation error for the 1985-86 Property valuation in excess of 100 percent.* * * The Department had knowledge in 1985 that the 1985-86 valuation was based upon a trending of a 1981 field appraisal by the Department's industrial appraisal section. As a result, immediately upon receipt of the Petition by [taxpayer] in 1985, the Department was put on notice of the potential for a gross valuation error for the preceding years. * * *"

Taxpayer's argument fails because each tax year stands on its own. An alleged gross valuation error for one year does not automatically give notice of a gross valuation error for a prior year, even if trending is involved. For example, an overvaluation in one year might be the result of an actual decrease in value from prior years. Thus, taxpayer's 1985 petition did not give notice of a valuation error in 1983-84.

Taxpayer next argues:

"It is well established that notice of acts and circumstances which would put a man of ordinary intelligence upon inquiry is equivalent in the eyes of the law to knowledge of all the facts which a reasonable inquiry would disclose. Thus, there is a genuine issue of fact as to whether [taxpayer's] Petition, in conjunction with the Department's knowledge of the potential for trending inaccuracies resulting from a faulty appraisal, were such that a reasonable man would have been put on inquiry as to probable errors for other years. There is also a second issue of fact as to whether a reasonable inquiry

---

*visory power* to those which the individual has good and sufficient cause for not using the normal appeals process.

"To allow the Department of Revenue to correct the assessment and tax roll when it deems necessary to conform the roll to applicable law." (Emphasis added.)

would have disclosed the gross errors in the 1983-84 tax roll. * * *" (Citations omitted.)

ORS 306.115(3) does not speak of implied knowledge or a duty to make a reasonable inquiry. Taxpayers, not the Department, have responsibility for keeping track of their property's value. The Department is not required on its own initiative to inquire into every factor, no matter how slight, which suggests that a taxpayer's property might have been overvalued.

Taxpayer also argues that it was entitled to discovery before the tax court granted summary judgment because the Department has exclusive possession of evidence which might prove that the Department had actual or implied knowledge of a 1983-84 valuation error. TCR 47F.[7] TCR 47F, which adopts ORCP 47F, provides:

> "Should it appear from the affidavits of a party opposing the motion that such a party cannot, for reasons stated, present by affidavit facts essential to justify the opposition of that party, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just."

Taxpayer maintains that TCR 47F "implicitly requires that a party opposing a motion for summary judgment be given reasonable opportunity to present all material made pertinent to motion." Even if taxpayer's interpretation is correct, taxpayer is not entitled to discovery. Taxpayer states that it "*argued* before the Tax Court *that discovery was necessary* to reveal whether and when the Department had actual or constructive knowledge of the error in the 1983 assessment value." (Emphasis added.) The record reflects that taxpayer made this argument before the tax court; however, taxpayer did not seek a continuance in order to conduct discovery.

---

[7] Taxpayer actually cites ORCP 47E. The context of taxpayer's argument, however, indicates that taxpayer probably intended to cite TCR 47F (ORCP 47F).

Taxpayer's argument is based on the assumption that the Department could have exercised supervisory authority if, in 1985, the Department had discovered *on its own* "reason to correct" the 1983 assessment. We do not reach the issue of whether the Department may exercise supervisory authority without being prompted by an outside party because, even if the Department has such authority, the tax court correctly granted summary judgment.

Under these circumstances, the tax court did not err in granting summary judgment without giving taxpayer the opportunity to conduct discovery.

In conclusion, *at the earliest,* taxpayer invoked the Department's supervisory authority in 1986-87. By then it was too late for the Department to do anything about the 1983-84 tax assessment. Thus, the tax court was correct when it granted summary judgment to the Department.

The judgment of the tax court is affirmed.