No. 13 April 9, 2015 113

IN THE SUPREME COURT OF THE
STATE OF OREGON

WILLAMETTE ESTATES II, LLC
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent,*
*and*

MARION COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5146; SC S062027)

En Banc

On review from the Oregon Tax Court.*

Argued and submitted March 13, 2015.

Henry C. Breithaupt, Judge.

Ridgway K. Foley, Greene & Markley, P.C., Portland, filed the briefs and argued the cause for appellant. With him on the briefs was Donald H. Grim.

Melisse S. Cunningham, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Daniel Paul, Assistant Attorney General.

No appearance by Intervenor.

LANDAU, J.

The judgment of the Tax Court is affirmed.

_____

* Judgment dated January 13, 2014.

**LANDAU, J.**

At issue in this case is whether the Marion County Assessor may obtain from the Department of Revenue a correction to the tax rolls concerning the valuation of the real property of taxpayer Willamette Estates II, LLC. The Tax Court Regular Division concluded that the assessor was authorized by administrative rule to seek such a correction and that the department was authorized by statute to allow it. Taxpayer appeals, arguing that the Tax Court's decision essentially sanctions an assessor's unlawful appeal of his own assessment. In the alternative, taxpayer argues that the Tax Court's decision conflicts with this court's precedents. For the reasons that follow, we affirm the decision of the Tax Court.

The relevant facts are not in dispute. Taxpayer owns an apartment complex located in Marion County. In 2008, the assessor assessed the following values for that property:

| Land real market value (RMV): | $ 1,002,840 |
|---|---|
| Improvements RMV: | $14,784,740 |
| Total RMV: | $15,787,580 |

Taxpayer appealed, and the local board of property tax appeals affirmed. Taxpayer then appealed to the Tax Court Magistrate Division, but challenged the value of the improvements only. In challenging the value of the improvements, however, taxpayer did not offer direct evidence of a lower real market value for the improvements. Instead, taxpayer offered evidence of the real market values for both the property as a whole and for the land only. Specifically, taxpayer offered an appraiser's testimony that the real market value for the property as a whole was $12,309,000, while the real market value for the land alone was $5,594,000. Taxpayer then argued that, having established those two values, basic arithmetic led to the conclusion that the correct real market value for the improvements was the difference between the two: $6,715,000.

The assessor stipulated that the real market value for the property as a whole was $12,309,000, as taxpayer contended. The magistrate found that the real market value

of the land was $5 million and, subtracting that value from the total stipulated value, concluded that the correct value of the improvements was $7,309,000. Because taxpayer had appealed only the value of the improvements, however, the magistrate's order altered only that component of the total assessment. In other words, even though taxpayer had offered evidence—and the magistrate had found—that the value of the land was $5,000,000, the original valuation of $1,002,840 for that land remained on the tax rolls.

In a separate proceeding, the assessor then filed a petition with the Department of Revenue to correct precisely that discrepancy. The assessor cited as authority for its petition ORS 306.115,[1] which gives the department general supervisory authority over the property tax system and grants it discretion to "order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll[.]" ORS 306.115(1). The assessor also cited a department rule promulgated to implement ORS 306.115, which states that the department may consider a requested correction upon a showing that "[t]he parties to the petition agree to facts indicating likely error." OAR 150-306.115(4)(b)(A). In this case, the assessor asserted, the parties had stipulated to a total real market value for taxpayer's property that, when combined with the value of improvements found by the magistrate, necessarily meant that the original land valuation was erroneous.

The department agreed with the assessor and revised the land value to $5,000,000. Taxpayer appealed to the Magistrate Division, which affirmed. Taxpayer then appealed to the Regular Division of the Tax Court, which also affirmed.

In its opening brief on appeal to this court, taxpayer advances two arguments in support of the contention that the Tax Court erred in affirming the department's decision to allow the correction to the tax rolls. First, taxpayer argues that the Tax Court impermissibly permitted the assessor to appeal his own decision. Second, taxpayer argues that the

---

[1] All references to statutes and rules are to the 2009 versions in effect when the assessor filed his petition with the department.

effect of the Tax Court's decision is to allow "impermissible value shifting" in violation of *Nepom v. Dept. of Revenue*, 272 Or 249, 536 P2d 496 (1975). We address each of those arguments in turn, concluding that neither has merit.

We begin with taxpayer's argument that allowing the assessor to seek a correction of a prior valuation amounts to an impermissible appeal of the assessor's own decision. Taxpayer relies on two prior Tax Court decisions for its argument. Its reliance on those decisions, however, is misplaced. To the contrary, as we will explain, the law expressly authorizes an assessor to seek, and the department to allow, a correction of errors on the tax rolls.

The statute at issue here is ORS 306.115(3). It provides in part:

"(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."

Textually, that statute does not limit the party who may seek a correction.

To implement that statute, the department promulgated OAR 150-306.115, which specifically authorizes a local tax assessor to petition for such a change or correction:

"(1) ORS 306.115 is an extraordinary remedy that gives the Department of Revenue authority to order a change or correction to a separate assessment of property. An assessor or taxpayer may request a change or correction by filing a petition with the department. * * *

"(2) The department may correct any errors or omissions in the assessment or tax roll under ORS 306.115(2) through (4), including but not limited to clerical errors and errors in property value, classification, or exemption.

"(3) Before the department will consider the substantive issue in a petition (for example, value of the property, qualification for exemption, etc.), the petitioner has the

burden of showing that the requirements for supervisory jurisdiction, as stated in ORS 306.115 and section (4) of this rule, have been met. The department will base its determination on the record before it.

"*****

"(4)   The department will consider the substantive issue in the petition only when:

"(a)   The assessor or taxpayer has no remaining statutory right of appeal; and

"(b)   The department determines that an error on the roll is likely as indicated by at least one of the following standards:

"(A)   The parties to the petition agree to facts indicating likely error[.]"

Thus, under the department's administrative rule, an assessor may petition the department to correct the tax roll.

An assessor's petition to correct the tax rolls proceeds in two steps. The first step requires the assessor to demonstrate that the department has what the rule denominates as "supervisory jurisdiction." Specifically, the assessor must prove that the assessor has no remaining right of appeal and that an error on the tax rolls is likely as indicated by, among other things, an agreement between the taxpayer and the assessor. The second step requires the assessor to demonstrate that, in fact, there is an error on the tax rolls.

In this case, the assessor satisfied those requirements. It is undisputed that there remained no avenue of appeal for the assessor. Further, it cannot be disputed that an error in the valuation of taxpayer's land necessarily followed from the parties' stipulation as to the total value of the real property and the magistrate's determination of the value of the improvements.

The Tax Court decisions on which taxpayer relies are not to the contrary. Neither holds that an assessor may not seek a correction of an error in the tax rolls pursuant to ORS 306.115 and OAR 150-306.115.

The first case, *Bear Creek Plaza v. Dept. of Rev.*, 12 OTR 272 (1992), held that, when a taxpayer appeals an assessment under the normal appeal statute, ORS 305.275, and that taxpayer challenges only one component of that assessment, the statute did not authorize an assessor to cross-appeal the other component of the assessment. *Id.* at 274. The court noted that ORS 305.275(2) authorizes an assessor to appeal only when the lower tribunal's order changed the value that the assessor had set, which had not occurred in that case. *Id.* But, the court added, even though there can be no cross-appeal in such cases, the department nevertheless could correct the tax rolls under ORS 306.115 and OAR 150-306.115. *Id.* at 275 n 3.

The second case, *Wynne v. Dept. of Rev.*, 9 OTR 378 (1984), likewise arose under ORS 305.275(2) and concerned the authority of an assessor to appeal under that statute. The court held that an assessor cannot appeal under that statute unless "aggrieved," that is, unless the lower tribunal altered the original assessment. *Id.* at 379-80. Once again, the court noted that another statute, there ORS 311.205, provided an avenue for correcting certain errors in an assessment. In that particular case, the court concluded that the assessor was not entitled to seek such a correction. *Id.*

Neither case, therefore, supports taxpayer's assertion that an assessor's petition to correct the tax rolls amounts to an impermissible appeal. Rather, both confirm that an assessor may seek corrections of errors in the tax rolls by other means.

We turn to taxpayer's argument that, in any event, allowing the assessor to obtain a correction of the tax rolls under ORS 306.115 amounts to impermissible value shifting, in violation of *Nepom*. According to taxpayer, because it appealed only the valuation of its improvements, any correction to the valuation of its land "effectively shifted the reduction in the improvements [real market value] to increase the land [real market value] that was never in issue," in violation of this court's precedent. Taxpayer, however, misreads that precedent.

In *Nepom*, this court held that, under the statutory appeal process in effect at that time, when a taxpayer appealed and challenged the valuation of only one component—either the land or the improvements—the sole issue *before the reviewing body* was the valuation of that component. *See* 272 Or at 254 ("In the instant case we see no valid reason why the parties by stipulation or by attacking only one of the valuations cannot raise the one specific issue *on an appeal*." (Emphasis added.)). *Nepom* thus announced a limitation on the authority of the body or tribunal reviewing the appeal. It said nothing about the department's supervisory authority later to correct errors in the tax rolls under ORS 306.115. That is unsurprising, given that, as we have noted, that supervisory authority is exercised outside of the appeal process that was at issue in *Nepom*.[2]

In a reply brief, taxpayer asserts a final argument: Even if it might otherwise be permissible for the assessor to seek a correction to the tax rolls based on an agreement between the parties indicating likely error, it still was not permissible for the assessor to do so in this case because there was no such agreement. According to taxpayer, ORS 306.115 and OAR 150-306.115(4)(b)(A) authorize a correction to the tax rolls only if the parties "unequivocally agree that an error existed on the tax roll," and there was no such agreement in this case. At best, taxpayer argues, there was an agreement concerning the total value of the property as the basis for taxpayer's proposed valuation of the improvements. In taxpayer's view, such an agreement did not constitute an agreement that the tax rolls should be changed.

We do not approve of the practice of advancing an entirely new argument for the first time in a reply brief. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error * * * is assigned as error in the opening brief[.]"). It could be argued that it is permissible to advance such an argument in this case because it goes to the "jurisdiction" of the department. *See*

---

[2] The legislature has since modified the rule in *Nepom* to allow other parties to a property tax appeal to put at issue any unappealed component of the property's value. *See* ORS 305.287; *Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 339 P3d 428 (2014).

*State v. Hess*, 342 Or 647, 653 n 4, 159 P3d 309 (2007) ("A party may raise the issue of the lack of subject matter jurisdiction at any time."). OAR 150-306.115(3) does use the term "supervisory jurisdiction." Whether the term is used in the sense of subject matter jurisdiction is debatable. But we need not join that debate because, even if taxpayer may raise its argument at such a late juncture, the argument is unavailing.

Taxpayer misstates what the administrative rule requires. Nowhere does the text of the rule require an assessor to establish that the parties "unequivocally agree[d] that an error existed on the tax roll." Instead, the rule requires that the assessor demonstrate that "[t]he parties to the petition agree[d] to facts indicating likely error." OAR 150-306.115(4)(b)(A). The rule does not require that any agreement be "unequivocal." Likewise, the rule does not require all parties to agree that an error existed in the tax roll. What the rule requires is evidence that the parties agreed to "facts" and that the facts they agreed to are ones "indicating likely error."

In this case, as we have noted, the parties agreed to a fact—specifically the total value of the property at issue, based on taxpayer's own appraiser's testimony—that, if true, indicates the original land value was in error. Taxpayer may have agreed to that value for what it perceived to be a different or narrower purpose, but that purpose does not alter the situation in any relevant way. The parties agreed to that total value. That total value is a fact. And that fact indicates the original land value likely was in error.

The judgment of the Tax Court is affirmed.