No. 41 June 30, 2016 779

IN THE SUPREME COURT OF THE
STATE OF OREGON

OAKMONT, LLC,
an Oregon limited liability company,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon; and
Clackamas County Assessor,
*Appellants.*

(TC 5178; SC S062342)

On appeal from the Oregon Tax Court.*

Argued and submitted September 14, 2015.

Kathleen J. Rastetter, Senior County Counsel, Oregon City, argued the cause and filed the briefs for appellant Clackamas County. With her on the briefs was Stephen L. Madkour.

Melisse S. Cunningham, Assistant Attorney General, Salem, argued the cause and filed the briefs for appellant Department of Revenue. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Daniel Paul, Assistant Attorney General.

Jack L. Orchard, Ball Janik LLP, Portland, argued the cause and filed the brief for respondent. With him on the brief was Amy Heverly.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

KISTLER, J.

The judgment of the Tax Court is affirmed.

_____

\* 21 OTR 375 (2014).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

## KISTLER, J.

Oakmont LLC owns an apartment complex built in 1996. Oakmont appealed the assessed value for the 2009-10 tax year for that complex on the ground that structural damages resulting from construction defects had substantially reduced the property's value. In 2011, the county assessor and Oakmont agreed to reduce the assessed value of the complex from over $21 million to $8.5 million for the 2009-10 tax year. Because the time for appealing the valuation for the 2008-09 tax year had passed, the taxpayer asked the Department of Revenue to exercise its supervisory jurisdiction to correct a "likely error" in the 2008-09 assessment. The department concluded that it had no jurisdiction to consider Oakmont's request, and the Tax Court reversed. *Oakmont LLC v. Clackamas County Assessor*, 21 OTR 375 (2014). Both the county and the department have appealed. For the reasons explained below, we affirm the Tax Court's judgment.

Before turning to the facts of this case, we describe the applicable statutes briefly. Oregon's ad valorem property tax system depends on assessments of taxable property within each county. Every year, each county assesses the value of all taxable property within the county. ORS 308.210(1). The county assessor must determine the real market value of each parcel of property "as of" January 1 of the assessment year. *Id.* After making those assessments, the assessor places the value of the property on the assessment and tax rolls, and that value is used to determine the amount of taxes owed that year.[1]

Some taxpayers, inevitably, will disagree with the county's assessment of their property's value. Under the

---

[1] Measure 50 (1997) significantly changed property tax assessment and taxation procedures in Oregon. Essentially, Measure 50 established that, for the 1997-98 tax year, the maximum assessed value for subject property was 90 percent of that property's real market value for the 1995-96 tax year. *See* Or Const, Art XI, § 11(1)(a). Measure 50 limited the extent to which the maximum assessed value could increase each year, and it provided that, with some exceptions, property would be taxed based either on its maximum assessed value or its real market value, whichever was lower. *See* ORS 308.146 (implementing Measure 50); *Flavorland Foods v. Washington County Assessor*, 334 Or 562, 565, 54 P3d 582 (2002) (discussing Measure 50).

"normal" appeals procedure, a taxpayer who disagrees with the county's assessment can file a petition with the county's board of property tax appeals by December 31 of that tax year. ORS 309.100(1), (2). The taxpayer may then appeal "an order of the board [to the magistrate division of the Tax Court] as a result of the appeal filed under ORS 309.100[.]" ORS 305.275(3); *see also ESCO Corp. v. Dept. of Rev.*, 307 Or 639, 642, 772 P2d 413 (1989) (describing normal appeals procedure). A taxpayer has 30 days after the board's order is issued or delivered in which to file an appeal under ORS 305.275 to the magistrate division. *See* ORS 305.280(4) (specifying more particularly the events from which the 30-day time limit for filing an appeal will run).

Independently of the "normal" taxpayer-initiated appeals process, the legislature has given the Oregon Department of Revenue "general supervision and control" over Oregon's property taxation system. ORS 306.115 provides, in part:

"(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. *** Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under subsections (2) to (4) of this section.

"* * * * *

"(3) The department may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal.

"(4) Before ordering a change or correction to the assessment or tax roll under subsection (3) of this section, the department may determine whether any of the conditions specified in subsection (3) of this section exist[s] in

a particular case. If the department determines that one of the conditions specified does exist, the department shall hold a conference to determine whether to order a change or correction in the roll."

ORS 306.115 gives the department supervisory authority that is both expansive and narrow. It gives the department broad discretion to "order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll." *Id*. The department, however, is limited temporally to ordering corrections for "the current tax year and for either of the two tax years immediately preceding the current tax year[.]" *Id*.

The department has promulgated a rule that guides and limits the exercise of its supervisory authority. That rule provides, in part:

"(1)   ORS 306.115 is an extraordinary remedy that gives the Department of Revenue authority to order a change or correction to a separate assessment of property. An assessor or taxpayer may request a change or correction by filing a petition with the department. \*\*\*

"(2)   The department may correct any errors or omissions in the assessment or tax roll under ORS 306.115(2) through (4), including but not limited to clerical errors and errors in property value, classification, or exemption.

"(3)   Before the department will consider the substantive issue in a petition (for example, value of the property, qualification for exemption, etc.), the petitioner has the burden of showing that the requirements for supervisory jurisdiction, as stated in ORS 306.115 and section (4) of this rule, have been met. The department will base its determination on the record before it.

"\*\*\*\*\*

"(4)   The department will consider the substantive issue in the petition only when:

"(a)   The assessor or taxpayer has no remaining statutory right of appeal; and

"(b)   The department determines that an error on the roll is likely as indicated by at least one of the following standards:

"(A)   The parties to the petition agree to facts indicating likely error; or

"(B)   There is an extraordinary circumstance indicating a likely error. [The rule then specifies the categories of extraordinary circumstances that will indicate a likely error]."

OAR 150-306.115.

Under OAR 150-306.115, a petition invoking the department's supervisory authority proceeds in two steps. *See Willamette Estates II, LLC v. Dept. of Rev.*, 357 Or 113, 118, 346 P3d 1207 (2015) (describing two-step process to correct tax rolls under OAR 150-306.115). First, a petitioner must demonstrate that the department has "supervisory jurisdiction" over the petition. *See id.*; OAR 150-306.115(3) (explaining that "[b]efore the department will consider the substantive issue in a petition," the petitioner must establish the predicates listed in OAR 150-306.115(4) for invoking that jurisdiction). One method of establishing supervisory jurisdiction—the method at issue in this case—requires a petitioner to establish two prerequisites: (1) the petitioner has no remaining statutory right of appeal; and (2) the parties to the petition "agree to facts indicating likely error" on the tax roll. OAR 150-306.115(4)(b)(A). If a petitioner demonstrates those two predicates, the department has supervisory jurisdiction, and the petition proceeds to the second step. At that step, the question for the department is whether there is actually an error or omission on the rolls and, if so, whether the department should exercise its discretion to correct it. *See Willamette Estates II, LLC*, 357 Or at 118 (describing two-step procedure); OAR 150-306.115(2) (providing that "[t]he department may correct any errors in the assessment or tax roll under ORS 306.115(2) and (4)").

In 2003, Oakmont purchased a 266-unit apartment complex built in 1996 and located in Clackamas County. The Clackamas County assessor valued that property at $22,914,810 as of January 1, 2008, and placed that value on the assessment and tax rolls for the 2008-09 tax year. Oakmont did not appeal that valuation. In February 2008, a maintenance worker noticed unusual swelling on the exterior surfaces of some of the apartment buildings. Oakmont

hired a forensic building inspection firm to determine the cause of the swelling. The firm inspected the buildings between May and June 2008. The inspection report, dated July 24, 2008, revealed significant construction defects and associated damage in the building exteriors, including water intrusion and wood rot due to elevated moisture levels. In November 2008, Oakmont initiated litigation against various contractors and architects for negligence in the construction and repair of the property. That litigation eventually settled, and Oakmont obtained undisclosed damages.

For the 2009-10 tax year, the county valued the property at $21,726,425. Oakmont appealed that valuation. After Oakmont filed its appeal, the county conducted an appraisal of the property in 2011. The county's appraisers initially concluded that construction defects affected the value of the property in the 2009-10 tax year, and they determined an "as is" real market value of $13,065,000 for the property as of January 1, 2009.[2] Later that year, after Oakmont's litigation against the contractors and architects concluded, Oakmont and the assessor agreed that the real market value of the property on January 1, 2009, was $8,500,000—a 60 percent reduction from the initial $21,726,425 valuation for the 2009-10 tax year. They also agreed to an approximately 70 percent reduction for 2010-11 tax year, compared to the initial 2009-10 valuation.[3]

When Oakmont and the county agreed on the value of the property for the 2009-10 tax year, the time for appealing the assessment for the 2008-09 tax year had passed. Oakmont accordingly asked the department to exercise its supervisory authority under ORS 306.115 and OAR 150-306.115 to correct the value on the rolls for the 2008-09 tax year. Oakmont argued that the construction defects discovered in early 2008 predated the January 1, 2008, valuation date, meaning that the value listed on the rolls for the 2008-09 tax year was far in excess of the actual real market value of the property.

---

[2] The county reached that figure by deducting the cost of repairs for the construction defects and associated rental loss from the initial valuation of $21,726,425.

[3] The parties agreed that the real market value of the property for the 2010-11 tax year was $6,800,000. When compared to the listed valuation for the 2009-10 tax year, that amounts to a 69 percent reduction in value.

To satisfy the applicable requirements for invoking the department's supervisory jurisdiction, Oakmont had to demonstrate that it no longer had any remaining right to appeal and that the parties agreed to facts that indicated a likely error on the roll. At a hearing before the department, Oakmont identified three "agreed facts" that demonstrated, in its view, a likely error in the valuation for the 2008-09 tax year. First, the county had acknowledged in the 2011 appraisal report that the construction defects were discovered in 2007 and thus predated January 1, 2008—the valuation date for the 2008-09 tax year. Second, the county had agreed to substantially reduce the valuations for the 2009-10 and 2010-11 tax years. Third, the county had made a determination to wait until the litigation between Oakmont and the contractors and architects concluded before adjusting the valuations for the 2009-10 and 2010-11 tax years.

Oakmont argued that those agreed facts "indicat[ed] likely error" in the 2008-09 assessed value. The county replied that it did not agree that the assessed value for the 2008-09 tax year should be reduced, stating that "we don't agree to facts for 2008, we didn't have any facts" that the 2008-09 valuation was incorrect. After considering Oakmont and the assessor's arguments, the department conference officer concluded that the department lacked supervisory jurisdiction over Oakmont's petition. The officer explained:

"The petitioner presented written documentation from previous court records asserting three agreements to facts that would predate the date of the value January 1, 2008 for the tax year 2008-09 that could likely indicate a valuation error. The first written evidence is from an appraisal report by Ron Saunders of Clackamas County dated February 11, 2011. [That appraisal report mentioned construction defects that were discovered in 2007 but did] not specify the nature or extent of th[os]e construction defects, only that some were noted and investigated. Since there is no agreement as to the condition of the property as of January 1, 2008 the agreed fact that that [*sic*] an investigation was conducted [in 2007] is not an indication of a likely error on the roll. The other two written assertions offered did not predate the [January 1, 2008] date of

valu[ation] or indicate the condition of the property as of the valuation date. Consequently, they cannot indicate a likely error on the roll as of January 1, 2008.

"The only relevant agreement is an ambiguous statement in a county appraisal prepared three years (February 11, 2011) after the [January 1, 2008] date of valu[ation] for the tax year in question. That statement does not account for the conditions that existed at the date of valu[ation] with sufficient specificity to indicate a likely error on the roll. The record indicates knowledge and extent of the condition of the property was not known for the tax year in question as of the January 1, 2008 valuation date."

To summarize, the conference officer found that none of the three agreed facts established a likely error on the rolls as of January 1, 2008. Regarding the first agreed fact, the officer found that the references in the county's 2011 appraisal report to the discovery of construction defects in 2007 were not sufficiently specific to indicate a likely error in the January 1, 2008, valuation. Regarding the second and third agreed facts, he found that they "did not predate the [January 1, 2008,] date of valu[ation] or indicate the condition of the property as of the valuation date." He accordingly concluded that no agreed facts indicated a likely error on the rolls and that the department lacked supervisory jurisdiction to consider Oakmont's petition. As a result, the conference officer did not decide whether there was in fact an error on the rolls, nor did he decide whether the department should exercise its discretion to correct any error.

Oakmont appealed the conference officer's decision, and the magistrate division affirmed. Before the regular division, Oakmont moved for summary judgment and the department and county filed cross-motions for summary judgment. After considering the parties' arguments, the regular division of the Tax Court (the Tax Court) granted Oakmont's motion for summary judgment and remanded the case to the department for a hearing on the merits of Oakmont's petition. The Tax Court explained that, ordinarily, it reviews the department's decisions *de novo*. *See* ORS 305.425(1) ("All proceedings before the judge of the Tax Court shall be original, independent proceedings and shall

be tried without a jury and de novo."). However, because the legislature gave the department discretion to decide whether to exercise its authority to correct an error on the tax roll, *see* ORS 306.115(3), the court stated that it reviews that decision for abuse of discretion. *Oakmont LLC*, 21 OTR at 377; *see also [ADC Kentrox v. Dept. of Rev.](link)*, 19 OTR 91, 100 (2006) (so stating). The court explained that the department abuses its discretion when it acts arbitrarily and capriciously or arrives at a decision that is clearly wrong. *See Martin Bros. v. Tax Commission*, 252 Or 331, 338, 449 P2d 430 (1969).

As the Tax Court framed the issue, the question before it was whether the department's decision that it lacked supervisory jurisdiction was clearly wrong. Specifically, the court asked whether the record showed that "'the parties to the petition agree[d] to facts which indicate it is likely that an error exists on the roll,'" contrary to the department's conclusion. *Oakmont LLC*, 21 OTR at 378 (quoting rule). The court emphasized that the department's supervisory jurisdiction does not turn on the parties' agreeing to an error on the roll—rather, the parties need agree only to facts that indicate a *likely* error. *Id.* (citing *[Ghazi-Moghaddam v. Dept. of Rev.](link)*, 20 OTR 288 (2011)). The court also explained that both the agreement between the parties and the facts indicating a likely error on the roll can arise after the original valuation date. Put another way, the parties can agree to facts that were not known until after the valuation date, and those facts can indicate a likely error on the roll as of that date. The agreement, therefore, "can occur, and often does occur, after a valuation date has passed." *Id.* at 379.

Applying that framework, the court first found that the assessor "clearly agreed" with Oakmont that construction defects existed and affected the value of the property as of January 1, 2009, when the assessor agreed to the stipulated judgment reducing the assessed value of the property from over $21 million to $8.5 million for the 2009-10 tax year. The court also reasoned that the assessor "implicitly, if not explicitly, agreed that the defects dated from the time of construction in 1996." *Id.* at 380. That agreement, in turn, indicated a "likely error" on the rolls in the

$22,914,810 valuation for the 2008-09 tax year.[4] The Tax Court concluded that the department abused its discretion in declining to exercise supervisory jurisdiction because the department was "clearly wrong" in concluding that the parties had not agreed to facts indicating a likely error as of the January 1, 2008, valuation date. *Id.*

Before considering the parties' arguments on appeal, we briefly address the appropriate standard of review of the department's order. As we explained in *Espinoza v. Evergreen Helicopters, Inc.*, "[w]hen a trial court [or administrative agency] exercises discretion, it acts within certain legal boundaries to choose from several permissible outcomes[.]" 359 Or 63, 116, ___ P3d ___ (2016). More specifically, a discretionary ruling by a trial court or agency can subsume both factual and legal issues. In reviewing a ruling for abuse of discretion, it can be important to distinguish the factual and legal issues that underlie an agency or a trial court's exercise of discretion. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining that, when a trial court's exercise of discretion rests on an incorrect legal premise, an appellate court will review that legal premise independently).

In this case, the department's conference officer did not "choose from several permissible outcomes" when he determined that the department lacked supervisory jurisdiction. Rather, he ruled, as a legal matter, that the second and third agreed facts that Oakmont identified did not establish a "likely error" because they did not predate January 1, 2008, the valuation date for the 2008-09 tax year.[5] Alternatively, he ruled, as a factual matter, that those

---

[4] Clackamas County argues that the statement in its 2011 appraisal report that construction defects were discovered in 2007 was incorrect; the county contends that no construction defects were discovered until 2008 at the earliest. Oakmont does not argue otherwise, and it notes that the defects were first discovered in February 2008. As we read the Tax Court's opinion, it did not rely on the erroneous statement in the county's 2011 appraisal report that construction defects were discovered in 2007. Rather, it relied on the proposition that the magnitude of the agreed reduction in value for the 2009-10 tax year (from over $21 million to $8.5 million) and the cause of that reduction (construction defects) necessarily indicated a likely error in the valuation for the 2008-09 tax year.

[5] As noted, no party disputes that the first "agreed fact" that Oakmont identified before the department was based on an erroneous statement in the county's 2011 appraisal report. Accordingly, we focus, as the Tax Court did, on the second and third agreed facts that Oakmont identified.

agreed facts did not establish a "likely error" on the rolls because they did not "indicate the condition of the property as of valuation date." The conference officer's first ruling presents a legal issue while his second ruling presents a factual one. It follows that, in reviewing those two rulings, the question is not, generically, whether the conference officer abused his discretion. Rather, the question is whether the first ruling was correct as a matter of law and whether there was sufficient evidence in the record to support the second.

We begin with the factual issue on which the conference officer's order rests—that Clackamas County's agreement to reduce the valuation for the 2009-10 tax year from over $21 million to $8.5 million did not "indicate the condition of the property" for the 2008-09 tax year. *See Bay v. State Board of Education*, 233 Or 601, 605, 378 P2d 558 (1963) ("Whether or not the Board arrived at a conclusion that was clearly wrong depends upon whether a review of the entire record discloses any facts from which the conclusion drawn by the Board could be reached by reasonable minds."). On that issue, the county and the department contend that there was evidence from which the conference officer could have found that the assessor and Oakmont did not agree to facts showing a likely error on the roll for the 2008-09 tax year. They note that the county assessor stated at the hearing before the department, "[W]e don't agree to facts for 2008, we don't have any facts" regarding the condition of the property on January 1, 2008. They reason that, because the assessor did not agree that construction defects affected the value of Oakmont's property as of January 1, 2008, there is evidence from which the conference officer could have found that no agreed fact indicated a likely error on the rolls regarding the 2008-09 tax year.

It is certainly true that the county assessor never agreed that the valuation for the 2008-09 tax year was erroneous, nor did he agree to the condition of the property on January 1, 2008. However, as the Tax Court observed, the county assessor agreed to facts regarding the value of the property for the 2009-10 tax year that necessarily

"indicat[ed] likely error" on the tax rolls for the preceding tax year. After Oakmont filed its tax appeal for the 2009-10 tax year, the county conducted an appraisal of the property. The county's appraisers concluded that construction defects affected the value of the property in the 2009-10 tax year. Consequently, they assigned an "as is" market value of $13,065,000 as of January 1, 2009—a value that they determined by subtracting the cost of repairing the construction defects and the associated loss of rental income from the initial valuation for the 2009-10 tax year.[6]

That agreed value—$13,065,000—is significantly lower than the initial valuation of $21,726,425. Moreover, later in 2011, Oakmont and the county agreed to a further reduction in the value of the property for the 2009-10 tax year; specifically, they agreed to an approximately 60 percent reduction in the valuation for the 2009-10 tax year from $21,726,425 to $8,500,000. Given the magnitude of the agreed reduction in value for the 2009-10 tax year and given the only identified reason for the county's agreed reduction in value (construction defects), the Tax Court correctly determined that the only reasonable finding that the conference officer could have made on this record was that the parties agreed to facts indicating a likely error in the valuation for the 2008-09 tax year.

The county and the department raise a second argument, which goes to the legal premise underlying the conference officer's order. They argue that, when a taxpayer contends that the "likely error" that gives rise to supervisory jurisdiction is a valuation error, only facts that were actually known on the date of valuation may be considered in determining whether the listed valuation is erroneous.[7] As the county puts it, "Facts which are not known to the market as of the date of valuation cannot be used

---

[6] The Tax Court noted that the construction defects had existed since 1996 when the apartment complex was constructed. Although the damages resulting from those defects presumably increased as time passed, it is at least likely that the damages that resulted in the property's value being substantially reduced for the 2009-10 tax year also affected the property's value in the preceding tax year.

[7] The county and the department phrase this argument in different ways, but the same principle underlies most of their arguments on appeal.

to value the property because such facts can have no effect on value."[8] As we understand the basis for the county and the department's argument, it runs as follows: The legislature has limited the department's supervisory authority to making changes or corrections to a tax roll "to conform the roll to applicable law." ORS 306.115(3). When a taxpayer claims that the roll contains an error in valuing property, "conform[ing] the roll to applicable law" means conforming the roll to the property's "real market value"—"the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." *See* ORS 308.205(1) (defining "real market value").[9]

The county and the department reason that, if facts affecting the condition of property were not actually known to the market on January 1, 2008, then those facts, by definition, cannot affect the property's real market value and thus there was no error (or likely error) on the rolls. Both the county and the department find support for their position in *Sabin v. Dept. of Rev.*, 270 Or 422, 528 P2d 69 (1974). The department argues alternatively that, even if there were other ways to read the phrase "likely error" in OAR 150-306.115(4)(b)(A), its reading of its own rule is plausible and we should defer to it. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) (explaining that courts will defer to the department's interpretation of its own rule as long as the department's interpretation is plausible and "not inconsistent with the rule, its context, or any other source of law").

---

[8] The conference officer explained that he could not consider the second and third agreed facts that Oakmont identified because they "did not predate the [January 1, 2008] date of value *or* indicate the condition of the property as of the valuation date." (Emphasis added.) His order thus suggested that, even if the agreed facts postdated the January 1, 2008, valuation date, those facts could be considered if they indicated the condition of the property on that date. The county and the department appear to take a more absolute position. They appear to argue that, even if the agreed reduction in the assessed value for the 2009-10 tax year did "indicate the condition of the property as of [January 1, 2008]," that agreement still could not be considered because the defective condition of the property was not actually known on that date.

[9] The statutory definition echoes, nearly verbatim, the definition used in the Oregon Constitution. *See* Or Const, Art XI, § 11(11)(a)(A).

We note, as an initial matter, that the county and the department's argument is difficult to square with the statutory definition of "real market value." The statutory definition does not say that only facts that are actually known on the date of valuation can be considered in determining property's real market value. Rather, the statute says that real market value means "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." *See* ORS 308.205(1) (defining "real market value"). Implicit in the phrase "informed buyer" is the proposition that an "informed buyer" would have engaged in a reasonable inspection of the property and thus would have learned facts that a reasonable inspection on the date of valuation would have revealed, even if those facts did not actually come to light until later.

The county and the department argue, however, that this court held in *Sabin* that only facts that were actually known on the date of valuation can be considered in determining property's true market value. That argument is at odds with both the result and the reasoning in *Sabin*. In *Sabin*, the county assessor had determined that the taxpayers' commercial property was worth between $6.00 and $7.00 per square foot. 270 Or at 425. The taxpayers contended that the assessor had overvalued their property and appealed. Approximately two years after the date of valuation, part of the property sold for $5.00 per square foot, and the taxpayers argued that the Tax Court should have considered that sale in determining the value of their property two years earlier. *Id.* at 426. This court agreed, explaining that "[a] sale of the property within a reasonable time of the assessment[,] while not conclusive, is very persuasive of market value." *Id.* This court remanded the case to the Tax Court with directions to consider the later sale—a fact that was not actually known at the date of valuation—in determining the property's real market value. *Id.* at 428.

Not only is that result at odds with the county and the department's argument, but so is the court's reasoning in *Sabin*. This court rejected the "assumption" that "evidence of events subsequent to the assessment date is irrelevant" to

determining property's real market value. *Id.* at 427 n 11; *see also Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 609, 732 P2d 497 (1987) (sale of similar industrial facility 15 months after assessment date was properly considered in determining whether earlier assessment was correct). In rejecting that assumption, the court explained in *Sabin* that the condition of the taxpayer's property had remained essentially unchanged and that the post-valuation sale was thus relevant to determining the real market value of the property two years earlier. 270 Or at 427 n 11; *accord Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 305, 882 P2d 591 (1994) (applying that principle). The court contrasted that situation with a later discovery that the property contained valuable minerals. 270 Or at 427 n 11. The court observed that "hindsight acquired by a later discovery of such facts should not be employed to change the valuation found on the assessment date." *Id.*

As we read *Sabin*, the discovery of valuable minerals involved a condition of the property that was neither known nor reasonably knowable as of the date of valuation. By contrast, the sale in *Sabin* two years after the date of the valuation bore on the value of the existing use of the property. The information may not have been known at the date of valuation but it was the type of information that an informed buyer and seller reasonably could have discovered on the date of valuation. The same is true here. We assume that Oakmont and the county did not actually know of the construction defects on January 1, 2008. However, as the worker's discovery in February 2008 suggests and an inspection in May and June of that year revealed, a reasonable inspection of the property would have revealed those defects. In that respect, the discovery of those defects is like the later sale in *Sabin*. It is after-acquired information that reasonably could have been discovered on the valuation date and that bears on whether the assessor correctly valued the property on that date.

Not only is the legal principle on which the county and the department's second argument turns—that only facts that are actually known on the date of valuation may be considered in determining property's real market value— squarely at odds with our decision in *Sabin* and other cases,

but that principle is also difficult to reconcile with the text of OAR 150-306.115. The text of that rule requires only that the parties agree to facts "indicating likely error" on the tax roll. It may be that, on further review, the department could find that the construction defects would not have been discovered if a reasonable buyer and seller had inspected the apartment complex on January 1, 2008. *See Willamette Estates II, LLC*, 357 Or at 118 (distinguishing between likely error and actual error for the purposes of OAR 150-306.115). However, the agreed facts "indicate" that it is at least "likely" that a reasonable inspection would have uncovered the existence of construction defects and that the error in the assessment for the 2008-09 tax year should be corrected. We recognize that the department argues that we should defer to its interpretation of its rule. However, the department's interpretation of its rule rests on a legal principle that we rejected in *Sabin*. *See Crystal Communications, Inc.*, 353 Or at 311 (explaining that no deference is due when department's interpretation is "inconsistent with * * * any other source of law").

The Tax Court correctly held that the department had supervisory jurisdiction over Oakmont's petition to reduce the assessed value of the property for the 2008-09 tax year. Oakmont had no remaining statutory right of appeal, and the parties to the petition agreed to facts indicating a likely error on the tax rolls. It follows that the department had supervisory jurisdiction to consider whether there was in fact an error on the tax rolls and whether, if there was, the department should exercise its discretion to correct any error. The department did not reach those issues, and we express no opinion on them.[10] Rather, we agree with the Tax Court that the case should be remanded to the department to consider those issues in the first instance.

The judgment of the Tax Court is affirmed.

---

[10] The county argues that we should reverse the Tax Court's decision and affirm the department's order because the department correctly exercised its discretion to decline to correct any error on the rolls. As we read the department's order, the department ruled that it lacked supervisory jurisdiction to consider the issue raised by Oakmont's petition and thus never exercised its discretion. It follows that the county's argument is premature.